Sept., 1923] Robertson *v.* Miss. Packing Co. 837

134 Miss.] Syllabus.

Robertson, State Revenue Agent, *v.* Mississippi Pack-
ing Co.

(En Banc. Jan. 21, 1924.)

[98 So. 539. No. 23726.]

Taxation. *Purchaser of meat packing plant of insolvent corporation
held entitled only to unexpired tax exemption.*

Chapter 146, Laws 1910, as amended by chapter 100, Laws 1916
(sections 6878 and 6879, Hemingway's Code), and chapter 183,
Laws 1918 (section 6878, Hemingway's Supp. 1921), provides
that among other enterprises plants engaged in the meat packing
business "in the course of establishment or shall be hereafter
established in this state . . . shall be exempt from all state,
county and levee taxation for a period of five years . . . such
exemption to commence from the date of the charter, or if not
chartered, then the date of the commencement of operation." A
meat packing plant was established and constructed by a corpora-
tion, which procured the five-year exemption provided by said
statute, and after operating a year or more became insolvent,
and its entire plant was sold under a mortgage and bought by
the mortgagee who sold the plant to a new corporation, with en-
tirely different stockholders and officers from the old, which new
corporation claimed another five-year exemption from taxes under
said statute. *Held*: That the new corporation was entitled to
the unexpired exemption of the old corporation but was not en-
titled to an additional five-year period of exemption.

Appeal from circuit court of Adams county.

Hon. R. L. Corban, Judge.

Suit by Stokes V. Robertson, State Revenue Agent,
against the Mississippi Packing Company. From a
judgment for defendant, plaintiff appeals. Reversed and
remanded.

*May, Sanders & McLaurin,* for appellant.

The only question for consideration by the court on
this appeal is this: Can a new corporation taking over
the business and property of an insolvent corporation,

both engaged in the same kind of business, secure the five years exemption from state and county taxes granted by law to certain enterprises where the same property and business had already been exempted for five years and a part of the five years had elapsed? In other words, can there be successive exemptions of the same property by tacking one upon the other upon a change of ownership? It is our contention that this question should be answered in the negative. The exact question we believe has not been before this court but a similar question has been before the Kentucky court and that court held as we contend. *Victor Cotton Oil Company* v. *City of Louisville,* 148 S. W. 10, 149 Ky. 149.

A corporation created by the consolidation of three corporations which continued business in the same city by means of a large plant was held not within the purview of the exemption statute which authorized the city of Louisville to exempt from taxes for a period of years as an inducement to the location of industries. *Jones Bros.* v. *City of Louisville,* 135 S. W. 301, 142 Ky. 759.

The exemption conferred in a case of this sort is an exemption of the specific property described in the petition for exemption and in the auditor's certificates conferring exemption in the manner provided by the statute in such cases and it is not a personal exemption. The exemption when conferred, as we understand the law, attaches to the property and follows it for the five year period notwithstanding the change of ownership and when the five years has expired the said property, which continues to be devoted to the same general uses, is not eligible to further exemptions. If it were so eligible no enterprise within the class exempt by law need ever pay taxes because at the end of each exemption period a new corporation could be formed to take over the property and renew exemption *ad infinitum.*

*Truly & Truly,* for appellee.

Appellant assumes that the new corporation takes over the business of an insolvent corporation which previously enjoyed an exemption. The inquiry further assumes that the new corporation takes over the ''property'' of an insolvent corporation which had previously enjoyed an exemption. Neither of these assumptions is well founded. There was no connection, actual or legal. There was no connecting link between the insolvent corporation (The Natchez Packing Company) and the appellee, the Mississippi Packing Company.

The Natchez Packing Company was insolvent and no longer a going concern. Conditions so remained. The plant and its packing houses and sheds were an eye sore to the public view lying just outside and upon the threshold of the city of Natchez. The roofs of the buildings became leaky. The frame work rotted. The machinery rusted. The shutters of the windows fell, and the half closed windows stared out upon every business visitor like the glazed and halfclosed eyes of a body who died by violence, typifying the corpse of a murdered financial enterprise. Conditions so remained throughout 1912 and 1913, and the community cried aloud for some relief from this financial body of death which still remained unburied, putrefying the financial atmosphere of the entire section.

Naturally, the place having been constructed for a specific purpose, that of meat packing, with the vats and machinery and applicances incident to such a business, could not readily be converted into anything else. Then it was that the citizens of Chicago and of Wheeling, West Virginia, were interested in the formation of a new corporation to engage not only in meat packing business but also to add to the business the extra department of manufacturing pure leaf and compound lard and canning farm products. In order to encourage these new investors to establish a new enterprise at the city of Natchez the bondholders practically gave away the entire plant and machinery which they had bought at the

foreclosure sale and which they still had on their hands, a constantly decreasing value. The result of these efforts was that the Mississippi Packing Company was incorporated. Not one single stockholder or bondholder of the former Natchez Packing Company was a bondholder or a stockholder of the Mississippi Packing Company. There was no connection of any kind between the Mississippi Packing Company and the Natchez Packing Company either in their corporate capacity or in the investors who constituted the two different corporations. The Natchez Packing Company had been out of existence for over two years and the Mississippi Packing Company was composed exclusively of non-resident investors. It will thus be seen that the new corporation did not in any sense take over the "business of an insolvent corporation." The Mississippi Packing Company did not take over the business of the Natchez Packing Company because the Natchez Packing Company had been out of existence and had had no business for over two years before the Mississippi Packing Company was organized.

Furthermore the Mississippi Packing Company was engaged in other business which likewise entitled it to exemption. Chapter 115, Acts 1912, included another class of enterprises which were authorized to receive the benefit of exemption so as to encourage their establishment. That was, "and all canning factories, canning vegetable, fruit and other farm products exclusively." It was as this character of enterprise as well as that of meat packing house which secured for the Mississippi Packing Company its exemption. This appears not only from the charter of the Mississippi Packing Company (sec. 3, par. B), but also from its petition upon which the exemption was granted.

We therefore contend that the record in this case does not show that the Mississippi Packing Company acquired either the "business" or the "property" of an insolvent corporation, or that the business prosecuted by

the Mississippi Packing Company had any connection, direct or indirect, either with the Natchez Packing Company or with any of the stockholders of that defunct corporation.

Chapter 183, Acts 1918, was enacted for the express purpose of dealing with the situation upon which the decision of the Kentucky court is founded in *Victor Cotton Oil Company* v. *City of Louisville,* relied upon by appellant.

The purpose of granting exemptions from taxation is ordinarily found in motives of public policy, such as the encouragement of manufacturing and other industries. 37 Cyc. 885. The fiscal authorities of the state in granting exemptions are not so much concerned with the identity of the property acquired by the enterprise which is granted the exemption as it is in encouraging the establishment of certain desirable enterprises in the state.

We submit that if the policy of the law be maintained to encourage the establishment of new enterprises that the previous use to which the property had been put would not be held to make the subsequent owners of such property taboo from receiving exemptions. Suppose one of the vacant factories in the city of Natchez, idle for years and years but once enjoying an exemption, should now be donated to an automobile company for the construction of automobiles, or to a shoe company for the manufacturing of shoes, would such company not be entitled to an exemption under the law? Or does the mere fact that the use of the property was once unsuccessfully made make inanimate property an outlaw from receiving exemptions no matter into whose hands it may pass or for what purpose it may hereafter be used. We sincerely submit that such is not the policy of the law.

*May, Sanders & McLaurin,* for appellant in reply.

Of course, there is a new owner, with new money, and the appellee contends that that justifies the claim of a new exemption. A most pathetic picture is drawn of the

abandoned business of the Natchez Packing Company, which is likened to a dead body festering in the sun, on the outskirts of the city of Natchez, and the present owners are pictured as having given new life to a dead thing, and this, it is said, constitutes the present enterprise. The simile is scarcely accurate. Rather should the business be likened to a derelict ship, stranded in the offing of the fair city of Natchez, either piled on the rocks by reckless piloting, or scuttled from within by her crew. The new owners might be likened to a new crew, who have gotten aboard, warped the ship back into safe water, and are now sailing under a new flag, with a new name. But it is the same old ship. The encouragement by exemption from taxation is intended solely for new industries, and not for an old one revived. Otherwise, the door would be opened wide to fraud, as the Kentucky court pointed out.

ANDERSON, J., delivered the opinion of the court.

Appellant, Robertson, state revenue agent, sought in the manner provided by statute to back-assess property of appellee, Mississippi Packing Company, for taxes for the years 1913 to 1918, inclusive. The board of supervisors of Adams county, in which county appellee's plant is situated, entered an order refusing to approve the back assessment by appellant. From this order appellant took an appeal to the circuit court of Adams county, where there was a trial and a judgment rendered by that court refusing to approve said back assessment. From that judgment appellant prosecutes this appeal.

The question involved is whether or not appellee, a corporation engaged in the business of meat packing, is entitled to the exemption authorized by chapter 146, Laws 1910, as amended by chapter 100, Laws 1916, (sections 6878 and 6879, Hemingway's Code), and chapter 183, Laws 1918 (section 6878, Hemingway's Supplement 1921). Said statute provides, among other things, that

plants engaged in the meat packing business—"now in the course of establishment or shall be hereafter established in this state . . . shall be exempt from all state, county and levee taxes for a period of five years. . . . Such exemption to commence from the date of the charter, or if not chartered, then from the date of the commencement of operation."

The question arises out of the following state of facts: The Natchez Packing Company was chartered under the laws of this state; its charter being approved on February 21, 1910. In January, 1911, proceeding under said statute, the Natchez Packing Company secured from the state auditor a certificate to the effect that it was entitled to exemption from state and county taxes for a period of five years. This concern established its factory and engaged in the meat packing business during the year 1911 and perhaps a part of the year 1912. It became insolvent. Its property was mortgaged. It ceased to do business, and the mortgage was foreclosed and the entire plant bought in for the mortgages. The plant stood idle until 1914, when it was purchased from the vendee at said mortgage sale by appellee, Mississippi Packing Company, a Virginia corporation. Appellee was an entirely new corporation. It had no connection with the Natchez Packing Company. Appellee simply bought the meat packing plant formerly owned and operated by the Natchez Packing Company. Appellee made some additions to the plant in the way of repairs, and extended its operations to the canning of vegetables and fruits in addition to the meat packing business. Conceiving that it was also entitled to the five years' exemption provided by said statute, appellee in August, 1914, obtained from the state auditor a certificate of exemption from all taxes for a period of five years beginning October 24, 1913, and ending October 24, 1918. Appellee's charter was dated October 24, 1913.

Appellant contends that the statute in question has no application to appellee's plant which had already received

the benefit of five years' exemption under said statute, that the purchase by appellee of the plaint was not the establishment of a meat packing plant in the sense of said statute, but simply the rehabilitation of a plant already established, and which had received the benefit of the exemption provided by said statute, and that therefore appellee is not entitled to the exemption for another five-year period.

On the other hand, appellee contends: That the plant and business established by the Natchez Packing Company ceased to be. It became bankrupt. As a result the business terminated. The plant and machinery stood idle for a long period. That notwithstanding appellee purchased said plant and machinery it established a new business, based on new capital under an entirely different management and owned by entirely different stockholders. That in the sense of said statute this amounted to the establishment of a meat packing plant.

The purpose of the statute was to induce the ''establishment'' in this state of the character of manufacturing and other enterprises therein enumerated. The language of the statute directly pertinent is:

''Which are now in course of establishment or shall be hereafter established in this state,'' etc.

Was the meat packing plant now owned by appellee established in 1910 by the Natchez Packing Company, or was it established in 1914 when appellee came into the ownership of the property and began its operation? The legislature had in mind, in the enactment of said statute, not the personnel of the stockholders or owners of the enterprise nor the officers and employees operating the same. The controlling thought was to encourage the establishment in this state of certain kinds of manufacturing and other enterprises. In order to induce their establishment, there was granted five years' exemption from taxes. That was the consideration offered by the state for the public benefit which was supposed to flow from the establishment and operation of such enterprises.

*Victor Cotton Oil Co.* v. *City of Louisville,* 149 Ky. 149, 148 S. W. 10, we think is directly in point.  The Constitution of Kentucky authorized the legislature to permit any incorporated town or city to exempt manufacturing establishments from municipal taxes for five years.  The legislature passed an act which conferred that power on cities of the first class.  The city of Louisville, pursuant to the statute, passed an ordinance ex· empting manufacturing establishments for five years from the time of their location.  A new corporation, composed in part of the stockholders of the original corporation an insolvent company, purchased its plant.  The court held that the new corporation was not entitled to the exemption.  In discussing the question, the court among other things said:

"There is no doubt that the Globe Refinery Company had ceased to do business finally, and, but for the reorganization of the Victor Cotton Oil Company, the plant would have been dismantled, or passed into other hands.  While it is true that the plaintiff was a wholly new corporation, and some new capital was invested in it, the old business was simply revived; and it cannot be said that the manufacturing establishment was brought to Louisville by reason of the inducement of immunity from taxation for five years. If an exemption was sustained under such circumstances, as the chancellor well said, less scrupulous men would avail themselves of immunity from taxation indefinitely, by shutting down at the end of every five years and reorganizing in the name of a new corporation."

We are of opinion that it is wholly immaterial whether the stockholders in the Natchez Packing Company own any stock in appellee company or not.  The ownership of the stock is not determinative as to when the plant of appellee was established, nor is the ownership of the property.  The question is, When was the plant—the buildings and property, that which was subject to taxation—established and located?  It is not who the own-

ers are or have been. Nor whether the operation of the business has ceased and begun again. We hold that appellee's plant in the sense of the statute was established on February 21, 1910, the date of the charter of the Natchez Packing Company.

The Natchez Packing Company was entitled to the exemption from the date of its charter, February 21, 1910, for a period of five years, which therefore ended on February 21, 1915, and appellee, as the owner of the plant, is entitled to the benefit of that exemption up to the latter date. From the expiration of that exemption, appellee's property was subject to taxes as other property in Adams county.

*Reversed and remanded.*

SYKES and HOLDEN, JJ., dissent. ·