# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## MARCH TERM, 1924.

---

MORRIS *v.* RILEY, Auditor.

(Division A. March 31, 1924.)

[99 So. 466. No. 24068.]

TAXATION. *Rebuilt manufacturing plant not entitled to exemption as "new enterprise."*

Chapter 146, Laws of 1910, as amended, chapter 100, Laws of 1916, chapter 183, Laws of 1918 (sections 6878 and 6879, Hemingway's Code, and section 6878, Hemingway's Code Supplement 1921), provides, among other things, that "new factories and new enterprises of public utility hereafter established" shall be exempt from all state, county and levee district taxes for a period of five years, such exemption to commence from the date of the charter, or, if not chartered, then the date of the commencement of operation.

An ice manufacturing plant was constructed, owned, and operated for many years by a corporation. The buildings and machinery were completely destroyed by fire. The remaining assets, including the name and good will, were thereupon taken charge of by the owner of a majority of the stock in such corporation, who continued the business. purchasing ice for the customers of the corporation from other sources. Such majority stockholder purchased the entire remaining assets of the corporation and proceeded to rebuild the ice manufacturing plant on another lot, but in close proximity to the lot where the former plant stood; the business is to be conducted under the old name, but to be owned and conducted by said controlling stock owner.

*Held*, that under said statute said ice factory is not entitled to exemption from taxation

135 Miss—.]　　　　　　　　(1)

APPEAL from circuit court of Hinds county, First District.

HON. W. H. POTTER, Judge.

Proceeding between Joe Henry Morris and George D. Riley, Auditor. From the judgment rendered, the former appeals. Affirmed.

*Green, Green & Potter,* for appellant.

The auditor contends that the application for a mandamus should be denied because the record affirmatively shows that the business of the Morris Ice Company was established in 1882; that the record further shows that the business of the Morris Ice Company has never ceased, its regular customers having continued to receive the same service as formerly, under the same personal supervision, and that the enterprise sought to be exempted is not such an enterprise as is contemplated by the statute. The determinative question, therefore, is what is the meaning of the phrase ''new factories hereafter established,'' as used in sec. 1, ch. 138, Laws of 1922.

This case is absolutely decided by *Robertson* v. *Miss. Packing Corporation* 98 So. 539. There can be no question here that a new ice factory is being built by the appellant. Not a single nut, bolt, or piece of machinery in the factory formerly occupied by the corporation will be used in the factory now being erected and established by the appellant, and not only this, but the new factory will be established, located and erected on a different lot than that formerly occupied by the corporation.

The intent of the legislature in passing the law under consideration was to induce capital to erect and build in Mississippi any of the manufacturing plants enumerated in the act, to the end that the people of the state could find employment therein, and that the capital which formerly was liquid, consisting of cash, bonds or other forms, might become permanently invested in the state, and after the five year period had expired, assist in bear-

ing the public burdens, thereby in years to come, lessening taxation on the balance of the people. We find this appellant at the present time with enough ready money now on deposit in the banks, and, therefore, exempt from taxation, desiring to establish an ice factory, and confronted with the question as to whether he will or will not establish such factory. At present his capital consists of money. He may or may not invest this money within the state of Mississippi. The public policy of the state as fixed by the legislature, is to induce him to change his form of investment from so much cash to a new ice factory located within the state—to the end that after the exemption period has expired, this capital may be invested in such form as that it will be taxable. As we view the question, it is wholly immaterial that at some prior time the appellant may or may not have been connected with some corporation which had established in Mississippi a factory of the character which he contemplates establishing within the state.

Prior to the adoption of the Constitution, taxation thus integrated into the Constitution was *in rem* against property, not *in personam* against the owner thereof. In *Ice Company* v. *Adams,* 75 Miss. 415, it was held that no personal judgment might be rendered for taxes, and the entire extent of the power came under discussion in *Delta, etc., Company* v. *Adams;* 93 Miss. 351, where it was held unconstitutional to impose retroactively a personal obligation for a tax, thereby specifically recognizing that the law, when the Constitution of 1890 was adopted, did not look otherwise than to the *res,* and did not in any way concern itself with the owner of that upon which it fastened its charge. The differentiation made by making taxes a debt was fundamental, and while constitutionally competent, the Constitution dealt with taxes solely as a charge *in rem* and as in no way imposing a personal obligation, this feature having become an after-acquired incident.

To demonstrate that opposing counsel is in error as to the interpretation of the legislature when he conditions an exemption upon there being naught but a new and untried business, note *Adams* v. *Cotton Mills,* 92 Miss. 746, wherein the legislature exempted not only factories to be erected, but those which "are now in course of establishment," defining, if you please, as to establishment of a factory the erection, construction and building of it. Therefore, dealing with the exemption law in question, this grant inheres in the property itself and does not attach to the person of the owner. In short, the thing is exempted, not the owner of the thing. That fundamental distinction completely harmonizes all the statutes upon the subject. The leading case in America on this subject is *New Jersey* v. *Wilson,* 3 L. Ed. 303, 7 Cranch 165, in which Chief Justice MARSHALL said:

"The privilege (tax exemption), though for the benefit of the Indians is annexed, by the terms which created it, to the land itself, not to their persons. It is for their advantage that it should be annexed to the land, because, in the event of a sale, on which alone the question could become material, the value would be enhanced by it."

Here, as there, the exemption is annexed by the law which created it to the property itself and thereunder and thereby those who should, during this period, become the owner therefrom profited, but the law which looked to the *res* did not concern itself with the element of individual property ownership. See, also *Gleason* v. *Wood,* 224 U. S. 679, 56 L. Ed. 947; *English* v. *Richardson,* 224 U. S. 680, 56 L. Ed. 949. See, also, *Grand Canyon Railroad Company* v. *Treat,* 95 Pac. 189.

*Morris Canal & Banking Company* v. *State Board of Assessors,* 71 Atl. 329, held: "When it is annexed to property, it passes with the grant of that property as an appurtenant to it."

There is not a provision in the law granting any personal immunity by reason of the character of the person owning. That immunized is the thing owned and opposite

counsel, with deference, cannot find any statute doing aught else, but it was argued that this property could and should be taxed. Our reply is that by the act itself only "tangible property used in, or necessary to the operation is immunized from *ad vatorem* taxation." All elements asserted to be taxable by appellee are taxable independently of the statute, under *Yazoo City* v. *People's Warehouse,* 97 Miss. 500. See, also *Panola County* v. *Carrier,* 89 Miss. 277; *State* v. *Simmons,* 70 Miss. 485.

At no time was immunity for intangible property vouchsafed. That which the Constitution authorized to be immunized was that which existed here in a fixed form and so existing, was incapable of transfer and whereof, when the period of exemption expired, there would be a time when the property itself would contribute to the welfare of the state. In the instant case, there still remains a portion of the old property belonging to the Morris Ice Company, a Delaware corporation. There remains its lot and other things which are in nowise sought to be connected with this operation and when consideration is given to the fact that the factory here is individually owned and individually to be operated, naught can be said which will deprive this individual owner of that which he had a right to expect.

See *United States* v. *Phellis,* 257 U. S. 156, where the court said that even where the parties were identical who were stockholders in a corporation and there was but an incorporation under the laws of a different state, that the corporation so thus created was a new company, and in concluding its declarations said: "In the light of all this, we cannot regard the new company as virtually identical with the old, but must treat it as a substantial corporate body with its own separate identity and its stockholders as having property rights and interests materially different to those incident to ownership of stock in the old company."

Here the Morris Ice Company as a corporation still continues to exist, but the fact that it has heretofore had

a profitable business cannot deprive an individual shareholder of the right to do that which as a citizen he had a right to do. In short, there is no legal identity between an individual and a corporation wherein he is a shareholder. Individual rights and corporate rights are separate and distinct. Even though the sole owner, he would be unable in his own name to convey the corporate property much less when, as here, he owned scarcely more than a majority of the stock. 14 C. J. 865.

In the present case, there is now no ice factory to employ labor, to serve the people or bear any part of the tax burdens of the state. Let us assume that the corporation's property had not been destroyed by fire, and that the appellant desired to erect and establish a new factory within the state of Mississippi, and had done so. There could then properly be no doubt as to his rights of exemption. This being true, is it of material moment that the corporation goes out of business or continues to manufacture ice? In a large number of cases, this would be a matter over which the individual desiring to establish a new factory would have no control. All that he could do would be to establish a new factory which the appellant in this case is now doing. *MacDonald* v. *I. & G. N. Railway Company,* 60 Tex. 590-595; *Village of Hempstead* v. *Seymour,* 69 N. Y. Supp. 63; *Robertson, State Revenue Agent,* v. *Mississippi Packing Corporation,* 98 So. 539. In this last case, this court has gone fully into the reasons inducing the legislature to grant the exemption, as well as the meaning of the word "establish," and we submit this decision is controlling.

*J. H. Sumrall,* Assistant Attorney-General, for appellee.

The language of the statute which controls this case is as follows: "That new factories and new enterprises of public utility hereafter established are granted exemption from *ad valorem* taxation . . . "

It is manifest that the purpose of the language employed was to make it clear that "new enterprises" were to be encouraged, using the terms "manufactures" and "of public utility" as descriptive only of the classes of enterprises to be thus encouraged.

The word "establish" has a wide range of meaning; depending in each case upon the connection in which it is used; and the rule was laid down in the Mississippi case of *Railroad* v. *Baldwin,* 78 Miss. 57, that the meaning of the word "establish" in an instrument must be gathered from the whole instrument; in other words, the context indicates the meaning intended. In *Davidson* v. *Lanier,* appealed from the Northern District of Mississippi, to the United States supreme court, and reported in 18 Law Edition 477, the supreme court of the United States in affirming said case held as follows:

"To establish a company for any business, means complete and permanent provision for carrying on that business and putting a company in operation may well include its continued, as well as its first original operation." *Mills* v. *Cook,* 56 Miss. 40, bears out the idea that the only purpose of such statutes from the beginning of such legislation was to foster and encourage infant industries.

Counsel for appellant states that: "This case is absolutely decided by *Robertson* v. *Mississippi Packing Company,* 98 So. 539." If this is true, which we do not deny, then this case must be affirmed as the only question decided was in absolute accord with the contentions of appellee herein.

Our court cited *Victor Cotton Oil Company* v. *City of Louisville,* 149 Ky. 149, 148 S. W. 10, which we think is also directly in point. The very fact that the period of exemption allowed to the Mississippi Packing Company consisted of the unexpired portion of the five-year period, which began on February 21, 1910, the date of the charter of the corporation which originally established the enterprise; and the following language of the court: "We hold that appellee's plant in the sense of the statute was estab-

lished on February 21, 1910, the date of the charter of the Natchez Packing Company," constitutes the clearest and fullest analysis of that decision of the court that could be made.

To my mind the slight change in ownership of this established industry would no more entitle the new owner to an exemption of any new plant or plants which were added to the enterprise than would the purchase of a new team, or wagon, or truck, or any of the many other items of property incident or necessary to the operation of an industry, entitle him to the exemption, since the statute expressly provides that the exemption shall apply to all tangible property used in, or necessary to the operation or the service of the industry, within the prescribed class, and therefore, when the five-year period during which such exemption may be granted for any of the property so used, expires, it necessarily expires for all purposes.

The whole theory of the argument of the counsel for appellant is based on the idea that the exemption is granted to the property, but the language of section 182 of the Constitution authorizing such exemption, as well as the language of the statute itself, when taken into consideration with the evident purpose for such provision, refutes the idea entirely.

The idea of attaching the payment of taxes, or the immunity from payment, to an inanimate physical property becomes frivolous when we consider the conditions prescribed for determining whether or not payment shall be made, as the date of procuring the charter of the corporation, or the date of beginning work, constitute the overt act by which the period is to be determined, and surely an inanimate ice plant does not procure a charter, nor does the physical labor performed by the individual person do anything more than definitely establish the fact of the putting into existence the proof of an intention to establish an enterprise.

Only the clearest and most reasonable construction can be applied to statutes of this character. In addition to the general rule of statutory construction to the effect that: "An act must be construed according to its reason and object" as held in *Grand Gulf Bank* v. *Archer*, 8 S. & M. 151, and *Love* v. *Taylor*, 26 Miss. 567, we have the additional strict rule of construction applied to exemption statutes well established in this state, as well as other states, and there can be no escape from the conclusion that the statute under consideration contains no language which could be so clearly construed under the rules announced as to warrant the exemption applied for. We refer the court to *Y. & M. V. Railroad Company* v. *Thomas, et al.*, 65 Miss. 562, 132 U. S. 174; *State* v. *Simmons*, 70 Miss. 485; *Greenville Ice & Coal Company* v. *City of Greenville*, 69 Miss. 86; *Adams* v. *Y. & M. V. Railroad Company*, 75 Miss. 275.

The principle is also well settled that the power of exemption, as well as the power of taxation, is an essential element of sovereignty, and can only be surrendered or diminished in plain and explicit terms. *Knoxville & Ohio Railroad Company* v. *Harris*, 99 Tenn. 684; *Vicksburg, Shreveport & Pacific Railway Company* v. *Dennis*, 116 U. S. 665; *Middleborough* v. *New South Brewing and I. C. Company*, 56 S. W. 427; *Robertson* v. *Paper Company*, 119 Miss. 113; *Re Boyd*, 17 L. R. A. (N. S.) 1220; *State ex rel. Taggart* v. *Holcomb*, 28 L. R. A. (N. S.) 251, 81 Kan. 879; *Knoxville & O. Railroad Company* v. *Harris*, 53 L. R. A. 921, 99 Tenn. 684; *First Congregational Church* v. *Board of Review*, 39 L. R. A. (N. S.) 437, 254 Ill. 220; *Lee* v. *Sturges*, 2 L. R. A. 556, 46 Ohio St. 153; *State ex rel. Wine* v. *Keokuk and W. R. Company*, 6 L. R. A. 222, 99 Mo. 30, affirmed in 152 U. S. 301, 38 L. Ed. 450; *Williams* v. *Warren*, 64 L. R. A. 33, 72 N. H. 335; *New Orleans* v. *Robira*, 11 L. R. A. 141, 42 La. Ann. 1098; *Atlantic & P. Railroad Company* v. *Leseur*, 1 L. R. A. 244, 2 Ariz. 428, appeal dismissed in 140 U. S. 669, 35 L. Ed. 593.

---

Having in mind this strict rule of construction, and having analyzed the purpose of the statute, and its application, then only a casual reading is necessary to understand that the terms "new" and "hereafter established" can mean nothing more than is implied by said statute, to-wit: being new in its very inception, as indicated by date of charter, or date of beginnng work; and "hereafter established" meaning established after the approval of the act, which was March 7, 1922.

Argued orally by *Chalmers Potter* and *Garner W. Green,* for appellant, and *J. H. Sumrall,* assistant attorney-General, for the state.

ANDERSON, J., delivered the opinion of the court.

The state auditor, appellee, denied appellant, J. H. Morris, the exemption from taxes claimed by him for his ice factory under chapter 138, Laws of 1922, being chapter 146, Laws of 1910, chapter 100, Laws of 1916, chapter 183, Laws of 1918, amended (sections 6878 and 6879, Hemingway's Code, and section 6878, Hemingway's Supplement 1921). The circuit court of Hinds county rendered a judgment in favor of appellee denying said exemption, from which appellee prosecutes this appeal.

The case was tried on agreed facts, which are as follows:

"It is agreed further: That Joe Henry Morris is a resident and citizen of the state of Mississippi, living in the city of Jackson, where he was born. That he is now thirty-one years of age, and has been engaged in the ice business at Jackson for fourteen years, working heretofore for the Morris Ice Company, a Mississippi corporation, and thereafter for the Morris Ice Company, a Delaware corporation. That initially he had no other position than as an employee, but gradually got to the place at which he became and was general manager of the Morris Ice Company of Delaware, and was receiving a

salary at the rate of five thousand dollars a year when the plant was destroyed by fire.

"That the entire plant of the Morris Ice Company was destroyed by fire November 1, 1923, and the destruction was complete. At the date of such destruction by fire, said Joe Henry Morris owned fifty-one per cent. of the stock of said Morris Ice Company, there being one hundred forty-four shares of such stock issued and outstanding, of which he owned seventy-three shares. This property belonged to him absolutely. That there were other stockholders in said corporation. Without fault on the part of any one, the Enochs Lumber & Manufacturing Company and adjoining property caught fire and the fire spread to the Morris Ice Company, where its complete plant was destroyed.

"That said Morris Ice Company had been in business in Jackson for a long period of years, having been incorporated in 1882, and that it had built up a large retail ice business in the city of Jackson and some carload lot business to surrounding towns. That in the ice business in Jackson and in the surrounding towns there has been and still is sharp competition in manufacture and sale. That at the present time the cost of material for rebuilding and of labor in rebuilding is abnormally high. That said Joe Henry Morris intends to erect an ice factory in the city of Jackson, not upon the lot heretofore occupied, and to operate said plant electrically, when the former plant was operated by steam. That said factory will be a new factory from the ground up, and that there will not be in the new plant a single bolt taken from the old property of the Morris Ice Company, and the said corporation has sold and is selling as much as possible of the said junk resulting from the fire.

"That said Joe Henry Morris owns no other business than the ice business, and rents his home in the city of Jackson, where he has resided since he was born.

"It is agreed that at the time of destruction by fire of the plant in the city of Jackson the Morris Ice Company

supplied approximately seventy-five per cent. of the ice sold by retail in the city of Jackson; that when the fire occurred it destroyed all of the instrumentalities, all of the wagons and trucks except two wagons. It did not destroy any of the mules. Immediately upon destuction the Morris Ice Company proceeded to buy ice from other dealers both in Jackson and elsewhere to continue to supply the business it had built up in Jackson. This was possible due to the season of the year, but in the summer season this method of continuation would be impossible due to the fact of the impossibility of purchasing adequate ice to supply the trade in Jackson.

"It is the purpose of the Morris Ice Company to continue this operation until the business is begun by petitioner, upon which all responsibility ceases, when such adjustment as may be agreed upon will take place between petitioner and the Morris Ice Company, whereunder he will acquire therefrom the intangible value of its good will and the two wagons and the mules, or such of them as may be left. There were twenty-two mules owned at the time of the fire, and six have been subsequently sold. The name 'Morris Ice Company' is of value and represents a course of dealing of many years' standing, satisfactorily serving the public.

"The evidence shall be treated as a part of and controlling in the petition and the questions raised on demurrer."

The first paragraph of section 1 of chapter 138, Laws of 1922, is in the following language: "That new factories and new enterprises of public utility hereafter established are granted exemption from *ad valorem* taxation on tangible property used in, or necessary to, the operation of the service or industry hereinafter named, but not upon the products thereof, for a period of five years, the time of such exemption to commence from the date of charter of a corporation, and, if an individual enterprise, then from the commencement of work; the

new manufactures and new enterprises of public utility to be exempted are enumerated as and limited to.''

In the following paragraph ice factories are enumerated as one of the new enterprises of public utility entitled to exemption from taxes.

Statutes exempting property from taxation are to be strictly construed against the ''would-be'' exemptionist. He must bring himself clearly within the statute under which the exemption is claimed. All reasonable doubts are resolved against him. *New Standard Club* v. *McGowen,* 111 Miss. 92, 71 So. 289, Ann. Cas. 1918E, 274.

Both sides rely to some extent on *Robertson, State Revenue Agent,* v. *Mississippi Packing Co.* (Miss.), 98 So. 539. The court said in that case (addressing itself to the particular facts in hand) that the question whether under the statute there is a new enterprise being established is not determinative in case of a corporation by the personnel of the stockholders, the ownership of the stock, the ownership of the property, nor whether the business of the concern has ceased and begun again; that the time when the plant, the buildings and property, that which is subject to taxation, is located, is the controlling factor; that the purpose of the statute was to induce the establishment in this state of new enterprises of the character therein enumerated; that the exemption was granted as an inducement to the establishment of such enterprises; that the public benefit to flow therefrom was the consideration for the exemption. The court did not intend to convey the idea that in determining whether or not a new enterprise is being established neither the personnel of the stockholders nor the ownership of the stock nor the ownership of the property nor whether the business had ceased and begun again should have any weight in any case, for in a proper case such considerations should weigh largely in determining whether an establishment is a new or an old enterprise. Bankruptcy, suspension of business, and a complete change in own-

ership were the principal facts relied on in that case as giving the right to the exemption.

It is true in the present case that appellant is rebuilding the plant on a different lot from where the old plant was situated. Nevertheless appellant, through his ownership of a majority of the stock in Morris Ice Company, owns a majority of the property and assets of that company which were not destroyed by the fire, including all of its personal property, choses in action, good will, etc. The business has gone right along with appellant in charge since the fire. When the new plant is rebuilt it is true it will be owned by appellant, and not by the Morris Ice Company; still it will simply be a continuation of the old business under the old name and a new ownership. It will be the old establishment repaired and added to. We hold that this is not the establishment of a new enterprise in the meaning of the statute. It is simply the old enterprise of the Morris Ice Company in a new form under new ownership. There has been no cessation in the business. The establishment has never ceased to be an establishment as shown by the agreed facts. If the exemption claimed here were allowed the state would be giving a consideration for the establishment of an enterprise already located and established, and which has been in existence for many years.

*Affirmed*