Rafael Buscaglia, Treasurer of Puerto Rico, Petitioner, *v.* Tax Court of Puerto Rico, Respondent; Ochoa Fertilizer Corporation, Intervener.

No. 83.   Argued June 17, 1946.—Decided December 3, 1946.

Luis Negrón Fernández, Acting Attorney General (E. Campos del Toro, Attorney General, on the brief), Elmer Toro Luchetti, Attorney of the Department of Justice, for petitioner. Guillermo E. González for the intervener, complainant in the main proceeding.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

Ochoa Fertilizer Corporation (hereinafter referred to as Ochoa) organized in 1937 a subsidiary corporation known as Puerto Rico Phosphate and Acid Works, Inc. (hereinafter called P. R. Phosphate), to be engaged in the manufacture of sulphuric acid and superphosphate. This company emitted common shares, and issued notes which passed to Ochoa, in exchange for machinery and equipment of the plant which Ochoa had acquired for the manufacture and processing of said products. The P. R. Phosphate applied to the Public Service Commission for a tax exemption for the new industry which it had established under Act No. 94 of May 14, 1936. After a public hearing, the exemption was granted by the commission and approved by the Governor.[1] Subsequently new plants were constructed for the manufacture of muriatic acid and potassium sulphate, and at the request of the P. R. Phosphate said plants (buildings, machinery, rights and privileges) were also tax exempted[2] as a new industry on July 5,

---

[1] In so far as pertinent, the decision rendered by the commission on December 29, 1938 reads thus:

" . . . that the *industry* established by the petitioner, Puerto Rico Phosphate & Acid Works, Inc., for the manufacture and processing of sulphuric acid and superphasphates, constitutes a new industry in Puerto Rico in relation to which the petitioner is entitled to a tax exemption under the provisions of the aforesaid Act No. 94 of May 14, 1936, for which reason this Public Service Commission hereby declares that it is exempt from all taxes and licenses fees, franchises, or municipal excise taxes or any other municipal tax for the period of ten years, as well as their buildings, machinery, materials, land, and all such property, rights and privileges owned by the petitioner and which are indispensable for its work and operation in connection with the processing and manufacture of the aforesaid products or substances, all of which shall be determined by the Treasurer of Puerto Rico, after a declaration shall be rendered by the petitioner.

[2] This second exemption was granted "for the balance of the exemption period" granted on December 29, 1938.

1940. The exemptions granted expressly excluded "any tax levied or that may be levied by law on the finished product or products of this industry."

In November, 1942, the P. R. Phosphate requested the Public Service Commission to transfer to Ochoa the exemptions granted and on December 29 of said year the transfer was approved by the Public Service Commission. In 1943 the subsidiary corporation was dissolved.

On September 2, 1944, Ochoa ordered from the P. R. Iron Works, representatives in Puerto Rico of the White Motor Co. of the United States, a truck tractor to be delivered F.A.S. in New York for $3,650. The truck was loaded on board the S.S. *San Luzon* in New York and consigned to The White Motor Co., with directions to notify on arrival the Phosphate and Acid Works Corporation—Ochoa Fertilizer Corp. The bill of lading was endorsed to Ochoa by the Iron Works, Inc., and the truck was lifted from the pier by Ochoa.

The Treasurer of Puerto Rico assessed to the P. R. Iron Works an excise tax on the truck with surcharges and interest amounting to $1,059.47, which was paid under protest by Ochoa, and the latter thereupon filed with the Tax Court a complaint against the Treasurer, seeking the return of the amount thus paid. After a hearing, the Tax Court found for the petitioner, and in order to review its decision we issued, at the instance of the Treasurer, a writ of certiorari. Petitioner contends that the Tax Court erred (*a*) in deciding that the tax exemption granted to the P. R. Phosphate pursuant to Act No. 94 of May 14, 1936, could be transferred to Ochoa when the property of the former was transferred to the latter and both corporations were consolidated, inasmuch as according to said Act No. 94 of 1936 the Public Service Commission is not authorized to order the transfer of a tax exemption, granted to a new industry, to an industrial plant; (*b*) in deciding that the transfer of the exemption in the present case

was valid in the absence of the approval of the Governor of Puerto Rico; (c) in deciding that excise taxes are included within the exemption granted; and (d) in deciding that, although the importer and not Ochoa had really been the shipper, the levying and collection of the excise tax on the truck was not proper inasmuch as the corporation which had ultimately acquired and used it in Puerto Rico, that is, Ochoa, was exempt in Puerto Rico.

■■ The petitioner is correct in maintaining that the general rule is that a tax exemption is not transferable. But such is the case when the exemption granted is a personal privilege and its transfer has not been authorized by law, and not when the exemption is a privilege granted to the property and is annexed thereto. Cooley on Taxation sets forth the doctrine as follows:

"Immunity from taxation is sometimes a personal privilege and sometimes a privilege annexed to property as an appurtenant to it. If it is a personal privilege, it is inacapable of transfer without express statutory direction. When it is annexed to property, it passes with the grant of that property as an appurtenant to it." Vol. 2, § 718, p. 1508.

The same author states that the privilege granted to the property does not "of its own force and without legislative direction run with the property as to which it was granted." Op. cit., p. 1508. However, the decisions have established that when the legislative intention is clear the exemption is transferable. Thus in Memphis & Little Rock Railroad Company v. Railroad Commissioners, 112 U. S. 609, it was decided, copying from the syllabus, that "A statute exempting a corporation from taxation confers the privilege only on the corporation specially referred to, and the right will not pass to its successor unless the intent of the statute to that effect is clear and express," and in the course of the opinion it was stated that the rule "is founded upon an obvious public policy, which

regards such exemptions as in derogation of the sovereign authority . . . and, therefore, not to be extended beyond the exact and express requirement of the grant, construed *strictissimi juris.*" [3]

This case involves a tax exemption granted to a new industry under Act No. 94 of May 14, 1936. Section 3 of the Act provides that: "The new industries to which tax exemption is granted, as well as their *buildings, machinery, materials and, in general, all such property, rights, and privileges owned by them* as are essentially required for their work and operation, shall be exempt from taxes for such term as the Public Service Commission of Puerto Rico may prescribe, . . ." (Italics ours.) This exemption, according to § 1 of the Act, is made "for the purpose of protecting and stimulating the establishment of new industries." In our opinion, the Legislature clearly expressed its intention to the effect that the Public Service Commission could grant in these cases not an exemption as a privilege to a person, whether natural or artificial, who for the first time establishes an industry in Puerto Rico, but to the new industry with all its properties essential to the development thereof, excluding only the tax on the finished product. The object is to encourage in Puerto Rico, not only the establishment of new industries essential to the economy of the country, but to protect this development.

In *Robertson* v. *Mississippi Packing Co.*, 98 So. 539, 540, wherein the facts were similar to the case at bar and was

---

[3] It has been stated that immunity from taxation attached to a property is purely metaphorical inasmuch as "The grant is to a person in respect of a thing, and it is said to inhere in or be attached to the thing only when by its terms the grant is assignable by a conveyance of the thing, and passes as an incident with the title to each successor. There must always be a person capable not only of receiving the title, but also of accepting the conditions accompanying it, and which constitute the exemption; otherwise the conditions become impossible and void." *Louisville & Nashville R. R. Co.* v. *Palmes*, 109 U. S. 244, 255.

decided on a statute similar to ours,[4] the court reached the conclusion that the exemption was transferable. The facts involved in that case were as follows: The Natchez Packing Company, chartered in 1910, constructed in 1911 a plant to be engaged in meat packing, procured a tax exemption, and began to work. A year and a half later the plant was mortgaged and subsequently the company became insolvent and the mortgage was foreclosed. In 1914, the Mississippi Packing Co. purchased the plant from the mortgagee and reestablished it to resume the meat packing. It requested a tax exemption for an additional period of five years. The Mississippi court held that, although the corporation was not entitled to an additional exemption, yet it was entitled to be exempted for the balance of the five-year exemption period which had been granted to the corporation that had been formerly exempted. In other words, that the period of three and a half year of exemption which the former company had not used, were transferred with the property to the new company. The court reasoned as follows: "The Legislature had in mind, in the enactment of said statute, not the personnel of the stock-holders or owners of the enterprise nor the officers and employees operating the same. The controlling thought was to encourage the establishment in this state of certain kinds of manufacturing and other enterprises. In order to induce their establishment, there was granted 5 years' exemption from taxes. That was the consideration offered by the state for the public benefit which was supposed to flow from the establishment and operation of such enterprises.

"*       *       *       *       *       *       *

"The Natchez Packing Company was entitled to the exemption from the date of its charter, February 21, 1910,

---

[4] The statute provided that among other enterprises plants engaged in the meat packing business "which are now in course of establishment or shall be hereafter established in this state . . . shall be exempt from all state, county and levee taxation for a period of five years."

for a period of 5 years, which therefore ended on February 21, 1915, and appellee, as the owner of the plant, is entitled to the benefit of that exemption up to the latter date.''

This same doctrine was ratified in *Gully* v. *Wilmut Gas & Oil Co.*, 165 So. 620. There it was said, copying from the syllabus: ''Where a corporation was entitled to tax exemption as new enterprise of public utility, purchaser of corporation's *property* at foreclosure sale held entitled to similar exemption for balance of five-year exemption period.'' (Italics ours.)

In *P. R. American Sugar Refinery, Inc.* v. *Treasurer*, 46 P.R.R. 582, cited by the Tax Court, it was assumed, without deciding it, that certain property which had been exempted from tax and was transferred by Sucesión de J. Serrallés to a subsidiary corporation belonging to it, continued to enjoy the exemption. It is true that the exemption was granted under Act No. 92 of 1917 (Appendix, p. 14), as amended by Acts No. 16 of 1925 (Sess. Laws, p. 132), No. 10 of 1927 (Sess. Laws, p. 430), and No. 40 of 1930 (Sess. Laws, p. 314), but that statute, like the one involved herein, was silent as to whether the tax exemption was transferable and merely provided that exemptions to new industries shall be approved by the Public Service Commission.

We are of the opinion that under the terms of the statute in force, the exemption granted to the property of the P. R. Phosphate could be transferred to Ochoa and that the lower court did not commit the first error assigned.

■■ Appellant urges in his second assignment that the Public Service Commission could not approve the transfer of the tax exemption without the Governor, in turn, having given his approval. Act No. 94 of May 14, 1936, is silent on this point. Section 3, which treats of the approval by the Governor of exemptions granted by the Commission, makes no reference to transfers. Act No. 70 of 1917, which establishes and defines the powers and duties of the Public Service Commission, provides in its § 58: ''The franchises, rights and

privileges granted by the said commission shall be ineffective until approved by the Governor and shall be reported to Congress." There is no doubt that in enacting Act No. 94 of 1936 the Legislature had in mind this provision which is nothing more than a compliance with § 38 of the Organic Act, and it so stated. However, was there any statutory provision which required the approval of the Governor for the transfer of a privilege or grant such as is a tax exemption? In our opinion there is none. Section 55 of Act No. 70 of 1917, provides: "No sale, *transfer*, purchase, *acquisition*, taking or holding, either in absolute ownership or in pledge, directly or indirectly, of any franchise, right, *privilege* or *concession* granted for public or quasi-public uses, *shall be effective until approved by the commission.*" (Italics ours.) No reference is made to the Governor in cases of transferring privileges or grants, and we are of the opinion that the approval given by the Public Service Commission to make the transfer in this case is sufficient to render it valid.

█  ██ As to the third error assigned, it is true as urged by the Treasurer that the tax exemption as a general rule does not include excise taxes, but it is likewise true that "the rule is not absolute, and is dependent upon the circumstances of each case." *State ex rel, Missouri Portland Cement Co.* v. *Smith, Auditor*, 90 S. W. (2d) 405, 407. In the case at bar the very language of the statute warrants the inclusion of excise taxes among those taxes from which the appellee is exempted. Let us see why:

The statute expressly provides that the exemption granted to new industries shall exclude income taxes and assessments for workmen's compensation. The Legislature could have likewise excluded excise taxes, and the fact that it failed to do so may be construed in the sense that it was its intention to include them in the exemption. This conclusion is buttressed by the fact that § 4 of the Act prescribes that "the municipality in which said new industry is located shall be bound to acknowledge such exemption, and, in consequence,

it shall not be allowed to collect from the said new industry any permit, license, or *municipal excise taxes,* or any other municipal tax, . . .''. (Italics ours.) The fact that the Legislature restrained the municipalities from collecting their excise taxes is strong indication that it considered the new industries exempted from paying insular taxes, by providing that the only taxes that were not included in the exemption were income taxes and the assessments under the Workmen's Compensation Act.

Another circumstance which shows that such was the legislative intent is § 6 of the Act, which provides that: ''The grant of the tax-exemption privilege as provided by this Act *shall not affect the payment of excises on alcoholic beverages* when the new industry to which such exemption is granted is one engaged in the manufacture of alcoholic beverages. In this case, the owner of the industry shall be bound to pay the above-mentioned excises, *notwithstanding the tax exemption granted to them.''* (Italics ours.)

The fact that the lawmaker made an exception with respect to excise taxes in particular tends to show that all other excise taxes are included in the tax exemption. It expressly stated that the excise on alcoholic beverages should be paid, but not the others.

The case of *E. Solé & Cía.* v. *Sancho Bonet, Treas.,* 53 P.R.R. 725, cited by petitioner, is not applicable to the facts of the present case and may be easily distinguished. In that case it was held that an exemption granted to the plaintiff merely included the industry of the manufacture of chassis of automobiles and, since the evidence showed that it was not engaged in said manufacture, the Treasurer could collect the excises on certain imported chassis, it being further held that, at all events, injunction was not the proper remedy to restrain the collection of said excises, but that plaintiffs should have paid them under protest and claimed their return and in the proceeding therefor raise the question of the alleged exemption.

As to the last assignment of error, although it is true that the lower court decided that the importer of the truck was also the shipper, the White Motor Company, it also decided that "the entity which ultimately acquired and used it in Puerto Rico was one which had been exempted from the payment of excise taxes." As we have said before, the truck was delivered on the S.S. *San Luzón* in New York and it was consigned to the White Motor Company, but with directions to notify on arrival the Phosphate & Acid Works—Ochoa Fertilizer Corporation, and the bill of lading was effectively endorsed to Ochoa by the P. R. Iron Works, Inc., the truck having been withdrawn from the pier by Ochoa. These facts were alleged and proved by the petitioner. Under our holding in *West India Oil Co.* v. *Tax Court*, 65 P.R.R. 70, the conclusion reached by the lower court is correct.

In *Hooven & Allison Co.* v. *Evatt*, 324 U. S. 652, the facts revealed that the petitioner received from foreign land certain fibers to manufacture cordage and ropes. Said fibers were consigned to the broker in the United States with directions to "Notify the Hooven & Allison Co." Under these facts the Supreme Court of the United States decided, at page 664, that: "It is enough for present purposes that the merchandise in this case was imported; and that petitioner was the efficient cause of its importation, the purpose and effect of which was petitioner's acquisition of the merchandise for its manufacture into finished goods. We conclude that petitioner was the importer, and that the merchandise in its hands was entitled to the constitutional tax immunity, surviving delivery of the imports to it."

In the case at bar, since Ochoa was the cause of the importation of the truck to be used in the new industry which was exempt from tax, it is the importer according to the doctrine stated above.

The writ issued must be quashed and the decision appealed from affirmed.

Mr. Justice Snyder, temporarily absent in the continental United States, concurs in the result.