EQUITABLE FINANCE Co. *v.* BOARD OF SUP'RS OF LEE COUNTY.

(Division B.    March 28, 1927.)

[111 So. 871.    No. 26364.]

1. TAXATION. *Private corporation's capital, invested in evidences of debt bearing not more than six per cent. interest, is not taxable (Hemingway's Code Supp. 1921, section 6879a[w]; Const. 1890, sections 112, 181).*

Under chapter 183, Laws of 1918 (section 6879a[w], Hem. Supp. 1921), all notes and evidences of indebtedness bearing a rate of interest not greater than six per cent. per annum and all money loaned at a rate of interest not exceeding six per cent. per annum shall be exempt from taxes; and that part of the capital of

a private corporation which is invested in such evidences of debt is not subject to taxation, individuals and corporations being taxed in the same manner and to the same extent, under section 181 of the Constitution of 1890.

2. TAXATION. *Notes bearing not over six per cent. interest, although bought by corporation at discount, are not taxable in hands of purchaser (Hemingway's Code Supp. 1921, section 6879a[w]).*
   Where a private corporation is engaged in buying automobile purchase-money notes at a discount from an automobile sales company which has a cash and a credit price, available at the option of the purchaser, and the notes so taken provide for six per cent., or less, per annum, the notes are not taxable in the hands of the corporation, although the corporation buys them at a discount and thereby earns more than six per cent. on its investment.

3. TAXATION. *Interest on evidences of debt in determining exemption from tax, is to be determined by contract as made between original parties thereto (Hemingway's Code Supp. 1921, section 6879a[w]).*
   The public policy of exempting evidences of debt bearing six per cent., or less, and money loaned at six per cent., or less, is to secure cheap rates of interest to the public, and the interest is to be determined by the contract as made between the original parties to such contract, and does not depend upon the amount of interest that may be available to a holder as the notes pass through the channels of trade.

*Corpus Juris-Cyc References: Taxation, 37Cyc, p. 908, n. 33.

APPEAL from circuit county of Lee county.

HON. J. I. STURDIVANT, Judge.

From a judgment upholding an assessment by the board of supervisors of Lee county, of capital invested within the state, the Equitable Finance Company appeals. Reversed, and judgment entered for appellant.

*J. M. Thomas,* for appellant.

I. It is contended by the appellant that the forty thousand dollar notes held by appellant on the first day of February, 1926, being the total amount of its assets employed in its business, which is the basis of the additional assessment, are exempt from taxation by virtue

of the provisions of chapter 183, Laws of 1918; section 6879A (w), Hemingway's Supplement.

From a careful search of our supreme court decisions, we do not find where this statute has been before our court for construction and, therefore, we are left to the application of the general rules governing the construction of statutes of this character. 2 Cooley on Taxation, section 674. Departmental construction is highly persuasive. Various departments have given recognition to the construction that exempts such property notes not bearing interest at a greater rate than six per cent.

The tax assessors of the entire state, the boards of supervisors, and the public generally, all as it were by common consent and understanding have believed and recognized that it was the legislative intent to exempt from taxation notes executed for the purchase of property and bearing no interest whatever except from maturity. Of course, such common understanding and administration by the officers and public is not conclusive as a legal principle, but extremely persuasive.

While this statute has not been construed by our supreme court, we are not absolutely without authority of our court on the question. See *Commercial Credit Co.* v. *Shelton,* 104 So. 75, 139 Miss. 132.

Following the legislative history of this tax exemption statute and without supreme court construction to suggest the clearing up of any ambiguity and evidently as a simple declaration of what construction had been placed on the statute for years, the legislature while amending the statute so as to make the exemption apply to *ad valorem* taxes only instead of all "taxes of any character whatever" inserted the language to make the statute apply to notes, whether payable annually or semiannually, and to notes even though bearing no interest at all. See chapter 258, Laws of 1926.

II. It is contended by the appellant that under section 6900, Hemingway's Code (section 4266, Code of

1906), the tax cannot be levied except against the notes, the property, the assets *themselves,* of the appellant—which appellant claims to be exempt—while on the other hand the appellee contends that the "amount employed in the business" of discounting the notes is the thing taxed. Appellee relies on *Harrison Naval Stores Co.* v. *Adams,* 104 Miss. 381, 61 So. 417. This case is authority for the position that it is the notes which are taxable and not the "amount employed in the business;" and it cannot be otherwise construed and be consonant with our constitution and adjudication by this court.

For a clear understanding of the principles involved in the question, of the true intent and meaning of this statute, section 6900, Hemingway's Code, it is necessary to go into the legislative and judicial history of the statute and its application both under former constitutions and the present one.

Section 6900, Hemingway's Code, probably appeared first in Hutchinson's Code, page 196, bearing date as early, if not earlier, than March 5, 1846. For practical purposes article 23, Code of 1857, is identical with section 6900, Hemingway's Code, with the exception that the clause "or employed in any kind of trade or business" did not then appear. Under the constitution of 1832 there was no limitation whatever upon the legislature as to equality or uniformity of taxes, no requirement that property tax should be *ad valorem* or according to value.

The statute in question was not a declaration of liability of certain property; to-wit, money employed in the business of discounting notes, etc., but only an administrative measure providing the *method* of assessment. Now see articles 12, 13, 16 and 20, Code of 1869; sections 1662-1753, inclusive, Code of 1871. Section 1682 is the same section which is now brought forward as section 6900, Hemingway's Code, the statute now under review.

146 Miss.—47.

It will be noted that the only change in this statute from article 24, Code of 1857, is that the Code of 1871 adds "or other joint stock company." This statute has been brought forward under section 3764, Code of 1892, after adoption of the Constitution of 1890 and is found as section 4273, Code of 1906, or 6907 of Hemingway's Code. Sections 497-489, Code of 1880, seem to be identical with sections 1682-1683, Code of 1871.

The first reported case directly involving the construction of this statute, section 497, Code of 1880 (section 1682, Code of 1871, article 23, Code of 1857) and which was construed under the provisions of the Constitution of 1869, was *State* v. *Bolton Smith et al.*, 68 Miss. 79, 8 So. 294 (October, 1890).

There are five other cases involving these constitutional provisions of 1869 and assessing statutes thereunder rendered by this court, which I shall discuss in the effort to show that they are not authority in point authorizing the assessment of "amount employed in business of discounting notes, etc." as distinguished from the duty of assessing the notes themselves. These cases are *Vicksburg Bank* v. *Worrell,* 67 Miss. 47 (1889); *Bank of Oxford* v. *Town of Oxford,* 70 Miss. 505, 12 So. 203 (1892); *Bank* v. *Adams,* 74 Miss. 179 (1900); *Hawkins* v. *Mangum,* 78 Miss. 97, 29 So. 872 (1900); and *Adams* v. *Bank of Oxford,* 78 Miss. 532 (1900).

*Hawkins* v. *Mangum,* 78 Miss. 97, is an interesting case, where the court had under consideration the act of 1888 (Laws of 1888, page 24) dividing counties into classes and the lands into sub-classes, fixing according to quality a maximum and minimum value for taxation on the lands in the several classes. This was held to be in violation of article 5, section 21, Constitution of 1869, and article 12, section 20, requiring property to be taxed in proportion to its value.

Taxation in the case at bar is laid just as on individuals and not just as on banks and our court has so held definitely in *Y. & M. V. R. R. Co. et al.* v. *Adams, Rev.*

*Agt.,* 81 Miss. 90, 32 So. 937 (1902), which holding was under the Constitution of 1869. See, also, *Adams* v. *Kuykendall,* 83 Miss. 571 (1903).

Now see sections 112 and 181, Constitution of 1890 and section 6900, Hemingway's Code. This statute is found in article 23, page 76, Code of 1857; section 1682, Code of 1871; section 497, Code of 1880; section 3757, Code of 1892; section 4266, Code of 1906; and section 6900, Hemingway's Code.

*Panola County* v. *Carrier & Son,* 89 Miss. 817, 42 So. 347, is authority in point as to the fact that it is the property of private corporations which is assessed for taxation and not the net amount of capital employed in the business, as might be gleaned from the phraseology of the statute itself.

In arriving at a decision in the case of *Peoples Warehouse Co.* v. *Yazoo City,* 97 Miss. 500, 52 So. 481, it was held that the tax against the private corporation was a property tax as against the assets of the corporation, but that where these assets did not amount to as much as the value of the capital stock then there was due to be made an additional assessment up to the value of the capital stock.

I again assert that there is no decision of the supreme court of this state that has held that private corporations are to pay taxes measured alone by the market value of their capital stock; but on the contrary they are to be assessed and taxed just as individuals are; and as the individual should pay on the property owned by him according to its value regardless of the amount he has employed in the particular business, so the corporation is governed by identically the same rule.

Appellant is willing to rest this case upon *Harrison Naval Stores* v. *Wirt Adams, Rev. Agt.,* 104 Miss. 381, 61 So. 417, as appellee appears anxious to do. Attention is also called to two more recent decisions of our supreme court: *Thompson* v. *Kreutzer,* 112 Miss. 165, 72 So. 891; *Thompson* v. *McLeod,* 112 Miss. 383, 73 So. 193.

The notes held by appellant under the agreed statement of facts are entitled to be exempted from taxation under the six per cent exemption statute; and if so, then the additional assessment against the appellant cannot be sustained and the case should be reversed and dismissed. However, I am perfectly free to admit that if the notes held by the appellant were subject to taxation as property and not exempted under the six per cent exemption statute, then this case should be affirmed.

*Mitchell & Clayton,* for appellee.

This assessment is made under the provisions of section 6900, Hemingway's Code. Under the agreed statement of facts, the Finance Company is clearly taxable if section 6900 applies and stands alone. In order for the company to escape taxes, it is necessary for it to show that it comes clearly within the provision of the exemption statute, section 6879.

It is true that the notes owned by the Finance Company bear on their face six per cent interest, but it is agreed that the Finance Company discounts them at a greater rate than six per cent. The notes in the hands of the Finance Company no longer bear only six per cent interest. The face of the notes is not conclusive evidence of the rate. Suppose the notes were discounted at fifty per cent, could it be argued that in the hands of the company which received the notes at such discount, said notes still were six per cent notes? Can it be argued that the law would permit a subterfuge of that kind?

*Harrison Naval Stores Co.* v. *Adams,* 104 Miss. 381, is absolute authority for upholding this assessment and unless that case is overruled there is no escape from affirming this case. See 120 Miss. 159, 81 So. 779; 77 So. 253. In the case at bar the assessment is against the money employed in the business. The notes, like the leases, serve only to inform the assessor of the amount of *money* used in the business.

Section 6900 is the section under which Swift & Co., Standard Oil Co., Gulf Refining Company, and all other non-resident corporations doing business in this state are required to pay taxes on the capital employed in business in this state.

We see no valid reasons why the Finance Company should escape when it is engaged in business in this state and is discounting paper at a greater rate than that provided by the legislature as an exemption.

Argued orally by *J. M. Thomas,* for appellant.

Etheridge, J., delivered the opinion of the court.

This is an appeal by the Equitable Finance Company, a corporation chartered under the laws of Delaware, having its property and place of business at Tupelo, Miss., from an assessment of forty thousand dollars by the board of supervisors on its capital invested in the state. The cause was tried in the court below on an agreed statement of facts, which reads as follows:

"The following is an agreed statement of facts, agreed to between Guy W. Mitchell, attorney for the board of supervisors, Lee county, Miss., for and on behalf of said board, and J. M. Thomas, attorney for Equitable Finance Company, for and on behalf of said company, with reference to the assessment of taxes against the Equitable Finance Company for the year 1926, said assessment appearing on the Personal Assessment Roll of said county for 1926, on page 306, line 19.

"(1) It is agreed that Equitable Finance Company is a foreign corporation chartered and organized under the laws of the state of Delaware, but having its principal place of business and office in the city of Tupelo, Lee county, Miss., and being engaged in said city of Tupelo in the business of discounting notes or other securities for money, and being so engaged in said business in said

city of Tupelo and said county, on the 1st day of February, 1926.

"(2)   That the board of supervisors of Lee county, Miss., has duly and regularly, in accordance with the statute in such cases made and provided, made an assessment against the Equitable Finance Company for taxes for the year 1926, under section 6900 of Hemingway's Code; such assessment being in the sum of forty thousand dollars for the amount of money employed in the purchase or discount of bonds, notes, bills, checks, or other securities for money; which assessment is in addition to an assessment filed by Equitable Finance Company covering the value of physical tangible property as follows: 'In repossessed automobiles, furniture and fixtures, four thousand five hundred dollars'—being a total assessment for said physical tangible property of the sum of four thousand five hundred dollars, which property was in the possession of Equitable Finance Company on February 1, 1926.

"(3)   That the board of supervisors of Lee county, now sitting as an equalization board at this, the regular August term of said board of supervisors, has determined and adjudicated and found that the Equitable Finance Company has the sum of forty thousand dollars employed in said business in accordance with said statute, and that Equitable Finance Company should be and has been additionally assessed with the said sum of forty thousand dollars, which it has adjudged to be the true value of the amount employed in the purchase or discount of bonds, notes, bills, checks, or other securities for money in the state of Mississippi; and it is agreed that, as a matter of fact, the Equitable Finance Company on the 1st day of February, 1926, did have said sum employed in said business.

"(4)   It is further agreed that all of the money so employed by the Equitable Finance Company, in the purchase or discount of bonds, notes, bills, checks, or other securities for money, is invested in what is known

as motor lien notes (with the exception of the physical tangible assets already assessed against the Equitable Finance Company, as above set out), which motor lien notes were purchased by Equitable Finance Company from various automobile dealers prior to the 1st day of February, 1926, and held, owned, and possessed by said Equitable Finance Company on February 1, 1926, and which motor lien notes were made under the following circumstances and conditions:

"(a)   That the various dealers in automobiles would sell automobiles to the purchaser thereof on a credit, under what is known as a conditional sales agreement; the cash price of the automobile being fixed, to which would be added by the dealer a certain sum of money to make the credit price, such additional charge, so added amounting to approximately a sum that would equal one per cent. per month.   That the dealer would, after adding this credit charge to the cash price, collect approximately thirty per cent. of the total in cash, and the balance would be settled by the execution of a note for said amount payable in twelve monthly equal installments.

"That next hereto attached is a copy of one of such conditional sales agreements, giving a typical illustration of the method adopted of calculation and the terms of such sale, and which copy may be used in connection with this agreement as a part thereof as if specifically set forth therein.

"(b)   That the various dealers would, after the making of said contract of sale, sell said contract and the note providing for the monthly installments to the Equitable Finance Company, who would pay the dealer or dealers therefor a price equal to the face value of the sum of said monthly installment notes after deducting therefrom an amount equal to the additional charge for credit; and which amount so deducted is an amount in each instance in excess of six per cent discount.

"That said notes bear six per cent. per annum after the maturity thereof until paid; that whenever any inter-

est is charged to or collected from the maker of the notes other than above set forth, the rate of interest thereon is calculated at six per cent. per annum from the maturity of the installments.   Guy W. Mitchell, Attorney for Board of Supervisors, J. M. Thomas, Attorney for Equitable Finance Co.''

It will be seen from the agreed statement of facts that the forty thousand dollars had been invested in notes bearing six per cent. interest after maturity, taken for the purchase price of automobiles; that on the 1st day of February, 1926, all the capital of the corporation, except the four thousand five hundred dollars physical tangible property mentioned in the agreed statement of facts, was invested in these notes.

Chapter 183, Laws of 1918 (section 6879a [w], Hemingway's Supplement), reads as follows:

''(w)   All state, county and municipal, levee or school bonds or other government obligations issued after the 1st day of April, 1906, and all notes and evidences of indebtedness bearing a rate of interest not greater than six per cent. per annum, and all money loaned at a rate of interest not exceeding six per cent. per annum shall be exempt from taxes of any character whatever.''

The court below held the company subject to the assessment, because under the agreed statement of facts the automobile company taking the different notes had a cash price and a credit sales price, either of which was available to the purchaser, and the credit sales price was an advance over the cash price equal to one per cent. per month on the deferred payments, and because of this fact that more than six per cent. was charged under an arrangement between the finance company and the dealer, and that as a consequence the finance company obtained more than six per cent. per annum on its money. We held in *Commercial Credit Co.* v. *Shelton,* 139 Miss. 132, 104 So. 75, that a similar contract was not usurious, because such credit price was in excess of the interest rate allowed by law; that the transaction was not one

merely of interest, but was a credit price properly involving not only interest for the use of money, but credit risk. In that case it was contended that the credit price amounted to more than twenty per cent. over the cash price, and, consequently, that both principal and interest were forfeited under the laws of this state, but we held to the contrary. We think the present case is controlled by the same principle, and, consequently, that there was not an interest charge in excess of six per cent. The notes expressly provided for six per cent. after maturity, and were six per cent. notes. We do not think that the test is whether the owner of the notes (where the notes bear six per cent. or less) gets them at such a discount as will enable him to reap more than six per cent. in profit on his money. The policy of the law in exempting notes, bonds, and other evidences of indebtedness not bearing more than six per cent. was to induce people to lend money at a low rate of interest. A person may take a note bearing six per cent. interest and be able to sell it on a basis that will yield a greater return to him; and another note bearing six per cent. interest might be sold on such a basis as to make it yield less than six per cent. net; while another note bearing eight per cent. interest might be sold so as to reduce the income to below six per cent., yet it would bear the rate of eight per cent. and the maker of the note would have to pay eight per cent. The test in such case, we think, is the true rate of interest the paper bears, for which the maker is responsible, and which he must pay. It does not depend upon whether the note is sold at a discount or a premium to determine the rate of interest it bears, under the law.

This brings us to the question whether the Equitable Finance Company, being a corporation, is assessed in the same way as an individual, or whether it is to be assessed upon its capital, regardless of how that capital is invested. In other words, must a corporation of this kind pay upon the amount of capital it has invested in the

business, regardless of whether that capital is invested in exempt property or not? By section 112 of the state Constitution taxation is required to be equal and uniform throughout the taxing district, and property must be taxed according to its value, although, in certain cases, the legislature may provide special methods of ascertaining its value. Section 181 of the state Constitution provides that the property of corporations shall be taxed in the same way and to the same extent as the property of individuals. In *Panola County* v. *Carrier, etc.,* 89 Miss. 277, 42 So. 347, the court considering the question of assessment for taxation of property of joint-stock companies and corporations other than banks, under section 4267, Code of 1906 (section 3758, Code of 1892), held that the section was incomplete and must be considered in connection with the constitutional sections above referred to; that, so considering it, the real and tangible personal property must be determined and deducted from the market value of the capital stock if the market value of such stock exceeded the total value of such property, thus establishing the principle that the property of the individual and the property of the corporation, other than such corporations as are specially provided for in section 181, should be taxed in the same way and to the same extent. In *People's Warehouse Co.* v. *Yazoo City,* 97 Miss. 500, 52 So. 481, this principle was reaffirmed. In *Robertson, Revenue Agent,* v. *Mississippi Valley Co.,* 120 Miss. 159, 81 So. 799, the revenue agent undertook to back assess the Mississippi Valley Company, a corporation chartered under the laws of the state and domiciled at Water Valley, upon that part of its capital stock which was invested in the stock of other railroad corporations whose property had already been taxed, on the ground that the amount so invested was subject to taxation by the city of Water Valley. It was contended by the revenue agent in that case that, under the statute above referred to, you should deduct the real estate which had been assessed for taxation and assess the capital stock

of the corporation at its domicile with the entire amount of such capital not invested in real estate, regardless of whether the property owned by the railroad in whose stock it was invested had paid taxes upon its tangible and intangible property.  The court was there equally divided upon the question whether such capital stock should be so taxed, but it had decided in another case (*Robertson, Rev. Agt,* v. *Mississippi Val. Co.* [Miss.], reported in 77 So. 253) that such capital stock was not taxable by the state or county for state or county taxes, and the court held that the former decision was a precedent, although decided by an equally divided court, and it was there held that such capital stock was not subject to taxation because it was invested in nontaxable property; that is, property upon which individuals were not subject to taxation.

We think that these cases are controlling here and are distinguished from the case of *Harrison Naval Stores Co.* v. *Adams,* 104 Miss. 381, 61 So. 417. In that case a nonresident corporation was engaged in manufacturing naval stores, and held certain turpentine leases for timber, which had been taxed to the owner of the timber growing upon the land which was not subject to taxation by the state, being certain of the school lands of the state.  In that case the capital of the company was not invested in nontaxable property.  At page 394 of the Mississippi Report (104 Miss. 394, 61 So. 418), the court said:

"It is certainly well known that it is the purpose of the state in its scheme for providing revenue to require all property, *saving such as may be especially exempted,* to be assessed for taxation and to bear its proper burden in raising the necessary funds for the expense of government." (Italics supplied.)

The court certainly had in mind, in writing this opinion, the saving from the operation of the opinion such property as might be specially exempted by law.  We think it was the policy of the legislature in exempting

money loaned at six per cent., or less, to encourage lending money at a cheap rate, and that the rate was to be determined by the original transaction, and not by the fluctuating values that such paper might have in passing through the channels of trade. The same paper in passing through the channels of trade might vary in its marketable value at the various times it was bought and sold, and there would be no certainty in determining whether it was taxable or not, if its return to the owner who might possess it during any particular year was the test. We therefore think the court erred, and the judgment will be reversed and judgment entered here for the appellant.

*Reversed, and judgment here for the appellant.*

