**INTERSTATE NATURAL GAS CO., Inc., v. GULLY, State Tax Collector, et al.**

No. 447.

District Court, S. D. Mississippi, Jackson Division.

Oct. 10, 1933.

David C. Bramlette, of Woodville, Miss., for plaintiff.

Walter Sillers, Jr., of Rosedale, Miss., Edward W. Smith, of Clarksdale, Miss., W. E. Gore, of Jackson, Miss., and J. A. Lauderdale, Asst. Atty. Gen., for defendants.

Before FOSTER, Circuit Judge, HOLMES and COX, District Judges.

HOLMES, District Judge.

The plaintiff seeks to enjoin the state's administrative officers from assessing its real and personal property for ad valorem taxes for the years 1927 to 1931, inclusive. It alleges a contractual right or grant of exemption of its conduit and pipe lines, pumping plants, and other property used by it in the transportation and distribution of natural gas.

This court has general jurisdiction (a) because the controversy, which is of the requisite amount, is wholly between citizens of different states; and (b) because the plaintiff alleges in good faith and upon reasonable grounds that the state is attempting to violate a contractual obligation which, under the Federal Constitution (art. 1, § 10) cannot be impaired. It has jurisdiction as a court of equity:

First, because in this instance "the attempted enforcement of a tax upon property which has been exempted by proper legislative authority from the burdens of taxation, constitutes a grievance of so irreparable a nature as to merit preventive relief by injunction." High on Injunctions (4th Ed.) p. 504, § 530; Osborn v. Bank, 9 Wheat. 739, 6 L. Ed. 204; Fargo v. Hart, 193 U. S. 502, 24 S. Ct. 498, 48 L. Ed. 766; City of Dallas v. Higginbotham-Bailey-Logan Co. (C. C. A. 5) 37 F.(2d) 513; Board of Assessors v. Pullman's Palace-Car Co. (C. C. A. 5) 60 F. 37.

Second, because the exemption covering realty and the tax being a lien thereon, the threatened action of defendants (which it is agreed will be carried into execution unless restrained) will cast a cloud upon plaintiff's title which only a court of equity is able to prevent or dispel. Hughes, Federal Practice, c. 15, § 1103, p. 307; Wilson v. Lambert, 168 U. S. 612, 18 S. Ct. 217, 42 L. Ed. 600; Dows v. Chicago, 11 Wall. 110, 20 L. Ed. 65; Ohio River, etc., Co. v. Dittey, 232 U. S. 587, 34 S. Ct. 372, 58 L. Ed. 737.

Other grounds of equitable relief are relied upon by the plaintiff; but it is unnecessary to enumerate or pass upon them, as the

698

combination of the two above mentioned seems to the court to be sufficient.

On the merits, the defendants assert that the exemption is void upon three main grounds:

First, the plaintiff is a foreign corporation.

Second, it is not a new enterprise of public utility.

Third, its property is not used for distribution.

There is nothing in the state Constitution which forbids the grant to foreign corporations of the exemption here assailed. The defendants contend that the exception in section 182 of the Constitution of 1890 applies to domestic corporations only. The section is as follows: "Section 182. The power to tax corporations and their property shall never be surrendered or abridged by any contract or grant to which the state or any political subdivision thereof may be a party, except that the legislature may grant exemption from taxation in the encouragement of manufactures and other new enterprises of public utility extending for a period not exceeding five years, the time of such exemptions to commence from date of charter, if to a corporation; and if to an individual enterprise, then from the commencement of work; but when the legislature grants such exemptions for a period of five years or less, it shall be done by general laws, which shall distinctly enumerate the classes of manufactures and other new enterprises of public utility entitled to such exemptions, and shall prescribe the mode and manner in which the right to such exemptions shall be determined."

If the defendants' contention be true, then this entire section applies to domestic corporations only, and there is no applicable limitation on the legislative power as to foreign corporations, other than section 181 of the same Constitution, which says: "The property of all private corporations for pecuniary gain shall be taxed in the same way and to the same extent as the property of individuals." Construing the two sections together, we conclude that exemptions granted to domestic corporations must commence "from date of charter," and to individuals or foreign corporations, from "the commencement of work." In any event, we find the Legislature free to grant to foreign corporations the exemption here asserted, provided only individuals are "taxed in the same way and to the same extent," which is true of the legislation now under consideration.

The problem then before the court is whether the Legislature intended to include foreign corporations in its enactments granting "exemption from taxation in the encouragement of manufactures and other new enterprises of public utility." Chapter 138, Laws Miss. 1922; chapter 172, Laws Miss. 1926. If a primary purpose of the legislation was to induce outside capital to come into the state, we can think of no sound reason why the lawmakers would desire to exclude foreign corporations. In Robertson, State Revenue Agent, v. Mississippi Packing Co., 134 Miss. 837, 98 So. 539, 540, the state revenue agent sought to assess a Virginia corporation before a five-year period of exemption (to which it had succeeded) had expired. The Supreme Court of Mississippi held the Virginia corporation entitled to enjoy the exemption. It said:

"It is not who the owners are or have been. Nor whether the operation of the business has ceased and begun again. We hold that appellee's plant in the sense of the statute was established on February 21, 1910, the date of the charter of the Natchez Packing Company.

"The Natchez Packing Company was entitled to the exemption from the date of its charter, February 21, 1910, for a period of 5 years, which therefore ended on February 21, 1915, and appellee, as the owner of the plant, is entitled to the benefit of that exemption up to the latter date. From the expiration of that exemption, appellee's property was subject to taxes as other property in Adams county."

This case was under a prior statute, giving similar exemptions, and the act in question was re-enacted in the light thereof. While the question of foreign incorporation was not discussed, it was mentioned by the court in its opinion, and the exemption was actually allowed to a foreign corporation. See, also, Equitable Finance Co. v. Lee County, 146 Miss. 734, 111 So. 871; Adams County v. National Box Co., 125 Miss. 598, 88 So. 168; LeBlanc v. I. C. R. Co., 72 Miss. 669, 18 So. 381. We therefore conclude that the exemption claimed by the plaintiff should not be denied merely because it is a foreign corporation.

It is next contended that the plaintiff is not "a new enterprise of public utility" within the meaning of section 182 of the Constitution and subsequent legislation in pursuance of the authority therein expressly grant-

ed. It is conceded that the plaintiff is not a public service corporation, as it does not sell or distribute gas to the public at large. According to a technical and more restricted use of the phrase, it is not "a public utility"; but at the time the exemption was granted it was a new enterprise of public utility within the meaning of said section 182, and there is no reason to think that the Legislature used the words in any narrower sense than was intended by the framers of the Constitution.

It is argued by the defendants that the word "other" should be stricken from section 181 as a palpably erroneous use of language. Counsel say in their brief:

"The word 'other' has no place in the following quoted sentence:

" 'Manufactures and *other* new enterprises of public utility,' and this clause should be read with the word 'other' dropped out and as though it had never been written into the Constitution, because it does not make sense and only leads to conflict and confusion in an attempt to construe the section.

"In using the language 'manufactures and *other* new enterprises of public utility' it is so plain and apparent, as to admit of no argument, that the framers of the constitution inadvertently and through mistake and error used the word 'other.' This word can have no proper place in the constitution because, as stated, it does not make sense. A manufacture is in no sense a 'public utility,' and the two are not the same kind and character of enterprise."

We do not feel justified in thus eliminating from the fundamental law a word which gives coherence of discourse to the subject, because, in the first place, it is a canon of construction to treat nothing as surplusage but to ascribe some meaning to every word and clause in the Constitution of a state, and, in the second place, such license of construction would not dispel an ambiguity, but create one. The exemption was intended to encourage "manufactures and *other* new enterprises of public utility." A factory is not a public utility in a restricted sense, but it is in the generic and ordinary use of the word. Being serviceable and ordinarily profitable, it is an enterprise of utility. The Century Dictionary defines "utility" as follows: "Usefulness, serviceableness, profit. The character of being useful, usefulness; profitableness; the state of being serviceable or conducive to some desirable or valuable end." Cyc. defines "utility" as: "The state or quality of being useful; usefulness; production of goods; advantageousness; profitableness; benefit; service; profit; avail."

The plaintiff was organized and sought exemptions for its pipe lines and pumping plants to be used for the transportation and distribution of natural gas. It was a new enterprise, the first of its kind in the state. Crossing the Mississippi river from the Monroe gas fields, it involved physical hazards for labor and financial hazards for capital. It resulted in the expenditure within the state of about two millions of dollars, and placed on the assessment rolls, after the period of exemption had expired, a valuation exceeding one million. It sells natural gas within this state to a public service corporation, to a consolidated school, and to an individual retailer thereof. It was an enterprise which looked to desirable and valuable ends, turning factory wheels, heating furnaces, shops, offices, and homes, and lightening the labors of men and women everywhere the product is brought into use. Under the facts, the plaintiff, as defined by the Constitution of 1890, is an enterprise of public utility, just as many factories are, although privately owned, operated for private profit, and not dedicated to a public use; that is, not a public utility in a technical sense.

■ The third contention of attorneys for defendants is that plaintiff's property is not used for distribution of natural gas. Attorneys for plaintiff in reply contend: First, that the law clearly exempts from taxation "all conduit and pipe lines," without further qualification; second, that there is a comma placed after "all conduit and pipe lines," and that there is no comma after "appliances" where the qualifying phrase begins; third, that the word "and" should be read "or" between the words "transportation and distribution." But it is not necessary for us to construe the act with such precision at this time, because, regardless of whether "all conduits and pipe lines" are qualified by the phrase requiring distribution of natural gas or not, we are satisfied that the plaintiff is engaged "in the transportation and distribution" of natural gas as a wholesale distributor, and that the statute does not limit grants of exemption to distribution to the ultimate consumer. Any "transportation and distribution" within the state is sufficient to obtain the exemption if the other requisites are present.

The temporary injunction heretofore issued, restraining the defendants from assessing plaintiff's property described in the bill, should be made final, and a decree may be entered accordingly.