### INTERSTATE NATURAL GAS CO., Inc., v. GULLY, State Tax Collector, et al.

#### No. 444.

District Court, S. D. Mississippi, Jackson Division.

Sept. 17, 1934.

D. C. Bramlette, of Woodville, Miss., for plaintiff.

Walter Sillers, Jr., of Rosedale, Miss., Edward W. Smith, of Clarksdale, Miss., and W. E. Gore, of Jackson, Miss., for defendants.

HOLMES, District Judge.

At the instance of the state tax collector, the state tax commission was proceeding to assess the plaintiff's real and personal property, situated in Mississippi, for ad valorem taxes for the years 1927, 1928, 1929, 1930, and 1931. As provided by local statutes, he

gave notice to the tax commission that said property had escaped taxation for said years and directed that it be assessed. The tax commission, in accordance with law, made a tentative assessment, and gave the plaintiff notice to appear on a day certain to show cause why it should not be made final. The plaintiff appeared on the day named; the hearing was had; and, at the conclusion thereof, the commission announced its determination to make the assessment final. By consent of all parties, the order was not entered at that time, but the matter was continued to a later day, fixed in the order of continuance, when it would certainly have been made final but for the restraining order issued herein, followed by an interlocutory and final injunction. Interstate Natural Gas Co. v. Gully (D. C.) 4 F. Supp. 697. On direct appeal to the Supreme Court (292 U. S. 16, 54 S. Ct. 565, 78 L. Ed. 1088), it was held that, since there was no substantial question presented as to the validity of the statute authorizing assessments of property which had escaped taxation, and since no statute specified the company's property, but authorized assessments only of property that was taxable, there was no occasion for constituting a court of three judges; and, without passing upon the merits, the decree was reversed and the cause remanded to the District Court for further proceedings to be taken independently of section 266 of the Judicial Code, as amended (28 USCA § 380).

The three-judge court having been dissolved, the cause has been reargued on amended and supplemental pleadings, elicited by legislation, both state and federal, enacted since the original bill was filed, and is now submitted for decision on a motion to dismiss the bill, made by the defendants, and a motion for an interlocutory injunction, offered on behalf of the plaintiff. These two motions, heard together, raise the following issues: (1) Federal jurisdiction; (2) equitable jurisdiction; (3) equitable fitness or propriety; (4) Declaratory Judgments Act; (5) liability for taxation.

In deciding that there was no occasion for constituting a three-judge court, the Supreme Court logically held that there was no substantial federal question in this case, but, nevertheless, there is federal jurisdiction on the ground of diversity of citizenship in a controversy where the requisite amount is involved.

■ The most discussed question in the argument and briefs before me has been one of equitable jurisdiction. In a former suit by the same plaintiff, wherein an injunction was granted to restrain the collection of a privilege tax, the point was not made (State Tax Commission v. Interstate Natural Gas Co., 284 U. S. 41, 52 S. Ct. 62, 76 L. Ed. 156), but later decisions settle the general rule that, in the absence of special circumstances giving rise to relief in equity, the taxpayer in Mississippi has a plain, adequate, and complete remedy at law by payment of the challenged tax and suit to recover it. Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447; Stratton v. St. Louis S. W. R. Co., 284 U. S. 530, 52 S. Ct. 222, 76 L. Ed. 465; First National Bank of Greenville v. Gildart (C. C. A. 5) 64 F.(2d) 873.

■ In addition to what was said in the former opinion with reference to equitable jurisdiction (4 F. Supp. 697), the special circumstances in this case sufficient to warrant equitable relief, alleged in the bill and admitted by the motion to dismiss, are that the state tax collector is insolvent, with uncollected and uncollectible judgments outstanding against him; that under section 6999, Code 1930, he retains 20 per cent. of all amounts collected by him to pay his own salary and expenses; and that he is under an inadequate bond; the same being for less than the amount of the taxes demanded. The same allegations are made with reference to the various sheriffs and tax collectors of the counties who would handle a part of the funds, and, with reference to some of them, it is specifically alleged that the surety on their official bonds is insolvent and in the hands of a receiver. It is shown that, if this money gets into the hands of the insolvent tax collectors and, after deducting their commissions, is faithfully paid over by them to the state, counties, cities, and various taxing districts, in the proportion which each is entitled to receive, it would require a multiplicity of suits to recover it. Other facts alleged show imminent danger of irreparable loss to the plaintiff if required to pay the tax, but it is not deemed necessary to discuss them, further than to say that, so far as well pleaded, the motion to dismiss admits them, even with reference to the financial embarrassment of the state, to whom a part of the money will be paid, and which cannot be refunded except by an act of the Legislature appropriating the same.

■ Although it is admitted that the assessment will be made unless the injunction is granted, it is claimed that the bill was prematurely filed, because the plaintiff has not exhausted its administrative remedy. This

admission is made as a matter of law by the motion to dismiss, because the allegation is made in the bill to that effect; it was made, as a matter of fact, in writing on the former hearing; and it was practically made orally by the attorney for the state tax commission on the latest hearing. So it is as certain as anything in the future can be that, as soon as it is free to do so, the tax commission will complete the assessment of plaintiff's property by manually entering the order, or having its clerk enter it, in fulfillment of its previously declared intention. In the recent case of City Bank Farmers' Trust Company v. Schnader, 291 U. S. 24, 54 S. Ct. 259, 78 L. Ed. 628, the court said it did not feel inclined to require dismissal under such circumstances. There is an additional equity here, not present in the Schnader Case. If the bill is dismissed, the injunction denied, and the assessment made by the tax commission, the plaintiff whose property is exempt from taxation will be in a dilemma. It will either have to pay the tax to insolvent tax collectors and seek to recover it by a multiplicity of suits; appeal to the circuit court of the county; or refile a similar suit in equity in this court. It cannot be certain of its course. According to the defendants, relying on First National Bank v. Gildart (C. C. A.) 64 F.(2d) 873, it will not have exhausted its administrative remedy until it has appealed to the circuit court of the county and caused judgment to be entered there. It is claimed that the state of Mississippi is a party to the tax proceeding and that the nonresident taxpayer must litigate, in a state court, not only the amount but its liability for taxation; and, when that court adjudicates the issues, that its sole remedy will be by appeal to a higher court with only appellate powers. If it fails to appeal to the circuit court, but seeks direct relief in a federal court, it may be contended there, as it is contended here, that it has failed to exhaust its administrative remedy and is not entitled to equitable relief. In view of the apparent conflict in the decisions, the plaintiff ought not to be required to take financial risks as to the proper procedure. "Where equity can give relief, plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law." Davis v. Wakelee, 156 U. S. 680, 688, 15 S. Ct. 555, 558, 39 L. Ed. 578, 584.

The recent act of the Mississippi Legislature (H. B. No. 960, chapter 206, approved March 31, 1934) has increased rather than dispelled the doubt. The former act (chapter 27, Laws 1931, Special Session) gave an appeal to the circuit court of the county; the amendment of 1934 provided, in section 1, for the appeal to be to the "judge of the circuit court"; in section 2, that "any taxpayer aggrieved by an order of the circuit court" might appeal to the Supreme Court; and repealed chapter 27 of said Laws of 1931. In other words, the appeal is "to the judge" and "from the court," the former an executive officer and the latter a judicial tribunal. I cannot follow the argument. How the proceedings are transferred from the judge to the court is not explained, nor is it pointed out when the metamorphosis from administrative to judicial proceedings takes place. In view of article 1, § 2, of the state Constitution, I cannot think, as contended by defendants, that this act makes a tax assessor or appraiser out of the circuit judge. A construction, harmonious with the Constitution, that the judge is to perform only judicial functions in a justiciable controversy, is more reasonable and is supported by the context, which grants an appeal to an appellate court by "any taxpayer aggrieved by an order of the circuit court." The case still goes to the same court of which the judge is part and parcel. He hears the case de novo without a jury and enters an order on the minutes of the court from which an appeal may be taken. As assessor, the judge could enter nothing on the minutes of the court nor exercise any of the functions or prerogatives of such judicial officer. The federal courts will follow such construction as may be placed upon the act by the highest court of the state, provided, as so construed, it does not conflict with the Federal Constitution or laws in pursuance thereto; but, in the absence of such construction, the very doubt as to when the administrative remedy ends involves such costly hazards that the plaintiff ought not to be required to speculate upon them. This doubt is sufficient of itself to accelerate such equitable remedy as the plaintiff might otherwise have after exhausting its administrative remedy. While this is true even as to a question of equitable jurisdiction, it must be remembered that we are not dealing with a jurisdictional question, but with one of equitable fitness or propriety, with respect to which the court may exercise a sound discretion to prevent a possible miscarriage of justice. As men must be just before they are generous, courts must dispense justice rather than comity, if the one endangers the other. Therefore this court should not turn away a plaintiff, as having prematurely entered its portals, when there is grave doubt as to what steps are necessary to satisfy the principles of comity. Union Pacific R.

Co. v. Board of Com'rs of Weld County (C. C. A.) 217 F. 540; Id., 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110. Also the bill alleges an unnecessary expense to the plaintiff of $10,000 to list and evaluate its property, if required to proceed further with its administrative remedy, and avers that this sum will be irreparably lost to it by a futile hearing to list and appraise exempt property. This hearing will settle nothing as to the exemption claimed if it stops with the assessment by the tax commission. Yazoo & M. V. R. Co. v. Adams, 81 Miss. 100, 101, 32 So. 937.

On the merits, it appears that in 1926 the Legislature of Mississippi enacted chapter 172, Laws of 1926, providing for a formal application for exemption from taxes by any person or corporation claiming "exemption from state and county ad valorem taxation, as a new factory or new enterprise of public utility." Under this act the plaintiff, which was organized in April, 1926, under the laws of the state of Delaware, filed an application for exemption from taxation, which was approved by the Attorney General of Mississippi. With said application it paid, as required by law, the sum of $250 to be expended by the Attorney General in investigating the merits of the applicant's claim for exemption. After the approval of said application for exemption, the plaintiff also paid the state of Mississippi the required fee of $500 to engage in business. Thereafter it constructed a pipe line system from Monroe, La., into and through the state of Mississippi, and thence again into the state of Louisiana. The expenditure by it in this state was approximately $2,000,000, which was made from 1926 to 1930, inclusive, and which introduced natural gas into this state. The plaintiff's property consists of pipe lines, with equipment and appliances used in transporting and distributing natural gas. It sells gas at wholesale but not at retail. Up to this time all of complainant's business in Mississippi has been interstate. No natural gas wells were proved in the state until 1930, and none at the time of the construction of the plaintiff's pipe lines. In fact, there was no natural gas in Mississippi from any source until introduced therein by plaintiff. Its application for exemption from taxation, as approved by the Attorney General, was from April 1, 1926, to April 1, 1931, and the validity thereof was not called into question by defendants until March 17, 1933, when proceedings for the assessment of said property were instituted by defendant, J. B. Gully, state tax collector, by directing the state tax commission to assess the same. The property for the period of claimed exemption was never returned, assessed, or considered for taxation because its exemption was recognized by the officers of the state and the agents of the plaintiff during that period; but it was returned for assessment and taxes paid thereon for the year 1932, the period of exemption having expired. No taxes are in arrears at this time, for the reasons, expressed in the opinion delivered on behalf of the three-judge court. 4 F. Supp. 698.

Since the original bill in this case was filed, the Declaratory Judgments Act was enacted by Congress (June 14, 1934, c. 512, 28 USCA § 400). It provides that in cases of actual controversy the courts of the United States shall have power to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and that such declaration shall have the force and effect of a final judgment or decree and be reviewable as such. Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. Since the motion to dismiss the bill is a general one, the petition for a declaration of rights, under the Declaratory Judgments Act, is of itself sufficient to necessitate overruling it; but, also for the other reasons mentioned, the motion to dismiss the bill is overruled, and, in order to prevent irreparable damage to the plaintiff, the motion for a temporary injunction is sustained. An appropriate order may be entered.