**GUILY, Tax Collector, et al. v. INTERSTATE NATURAL GAS CO., Inc.***

No. 7847.

Circuit Court of Appeals, Fifth Circuit.

Feb. 14, 1936.

. See, also, (C.C.A.) 82 F.(2d) 150.

J. A. Lauderdale, of Jackson, Miss., Walter Sillers, of Rosedale, Miss., and Edward W. Smith, of Clarksdale, Miss., for appellants.

David Clay Bramlette, of Woodville, Miss., for appellee.

Before SIBLEY, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellee is a corporation organized under the laws of and a resident and citizen of the state of Delaware. It constructed and owns in Mississippi a pipe line, used in the transportation and distribution of natural gas for fuel, light, and power. Appellants are the tax collector and members of the state tax commission of the state of Mississippi. Mississippi General Statutes [1] authorize the state tax commission to back assess property which has escaped taxation. On April 14, 1933, the state tax commission, at the instance of the state tax collector, tentatively back-assessed appellee's pipe line as having escaped taxation for the years 1927 to 1931, inclusive, fixing May 23, 1933, for final hearing.

On May 16, appellee, plaintiff, alleging that appellants, defendants, had. definitely determined to make the assessment final, to fix a lien upon plaintiff's property for the same, including penalties, damages, and costs, and to proceed by distress and other direct methods to sell plaintiff's property to collect the same, subjecting the plaintiff to irreparable injury, for which there is no adequate relief at law, brought this

[1] Chapter 214, Laws 1928; chapter 291, Laws 1932; Mississippi Code 1930, §§ 3226 and 6992; Code Supp.1933, §§ 3204, 3208.

*Writ of certiorari denied 56 S. Ct. 958, 80 L. Ed. —.

suit to restrain them from doing so. For grounds it alleged that the proposed assessments were illegal and void, and would impair the obligations of a contract by which the company had secured an exemption from taxation[2] in that appellee had duly applied for and had been duly granted, for the years in question, an exemption from taxation as to its pipe lines. A statutory court of three judges entered a final decree enjoining defendants as prayed. Interstate Natural Gas Co. ·v. Gully, 4 F.Supp. 697. Appealed to the Supreme Court, the decree was reversed and the cause remanded to the District Court for further proceedings. The court's holding was that the case was not one for three judges, in that no substantial question was presented as to the validity of the statute authorizing assessments of property which had escaped taxation, and the assessment was not a statute or an order of an administrative board or commission within the meaning of section 266, Judicial Code (28 U.S.C.A. § 380). Gully v. Interstate Natural Gas Co., 292 U.S. 16, 54 S.Ct. 565, 78 L.Ed. 1088. Thereafter plaintiff, appellee, filed its supplemental bill and petition for a declaratory judgment, and motions of dismissal having been overruled, and a preliminary injunction granted, issue was joined on the merits. On April 25, 1935, the cause, proceeding to hearing on the pleadings and the facts as settled in an agreed statement, resulted in a final decree awarding plaintiff the declaratory judgment it prayed, and a perpetual injunction to make the declaratory judgment operative.

The District Judge filed findings of fact and conclusions of law and a written opinion, Interstate Natural Gas Co. v. Gully (D.C.) 8 F.Supp. 174, in which the matters of fact agreed to were substantially set out and the illegal results thereof declared. This appeal is from that decree. Appellants attack it on procedural grounds and on the merits. The procedural grounds are: (a) That chapter 206, Laws 1934, gives plaintiff a plain and adequate administrative remedy by appeal to the judge of the circuit court of Hinds county; (b) it is settled law that appellee must exhaust its administrative remedies given by the state taxing laws before invoking the federal equity jurisdiction; (c) The Federal Declaratory Judgment Act (28 U.S.C.A. § 400) cannot avail appellee for it merely enlarges the character of judgments which that court may enter in causes of which it has jurisdiction. It does not in any manner change or enlarge the jurisdiction of that court as a federal court, or its jurisdiction as a court of law or equity.

Its attack on the merits of plaintiff's exemption claim is a flat assertion that plaintiff's pipe line is not a new enterprise of public utility within the exemption statute of Mississippi.[3] It insists that the pipe line is not exempt within the statute for the following reasons: Because (a) it is not an enterprise established within the state; (b) not an enterprise of public utility; (c) the pipe line is not "a conduit or pipe line, or other property, equipment or appliances used in the transportation and distribution of natural gas for fuel, light and power"; (d) it is the property of a foreign corporation.

To determine the points raised only a very brief statement of the facts will be required. Plaintiff was organized on April 1, 1926, under the laws of Delaware, to construct, and it did construct, a pipe line from the Monroe, La., gas field into and through Adams and Wilkinson counties, Miss., and thence again into Louisiana, at

---

[2] Chapter 138, Laws of Mississippi 1922, and chapter 172, Mississippi Laws 1926.

[3] General Laws of Mississippi 1922, chapter 138, § 1: ."Be it enacted by the Legislature of the State of Mississippi, That new factories and new enterprises of public utility hereafter established are granted exemption from ad valorem taxation on tangible property used in, or necessary to, the operation of the service or industry hereinafter named, but not upon the products thereof, for a period of five years, the time of such exemption to commence from the date of charter if a corporation, and if an individual enterprise, then from the commencement of work; the new manufactures and new enterprises of public utility to be exempted are enumerated as and limited to:

"What property and industries are exempt. Common Carrier, standard gauge railroads.

"All factories for making cotton goods; all woolen mills. * * * All conduit and pipe lines, pumping plants and other property and equipment and appliances used in the transportation and distribution of natural and artificial gas, crude oil and electricity and electricity for fuel, light and power, ice factories and hydro electric plants."

an expenditure by plaintiff of about $2,-000,000, thereby introducing natural gas into Mississippi.

Plaintiff duly filed its charter with the secretary of state of Mississippi, paid a fee of $500, and qualified to engage in business there. Plaintiff's property in that state consists of pipe lines and other property, equipment, and appliances used in conveying natural gas into and through and selling it in Mississippi. Its application for exemption under the statute from April 1, 1926, to April 1, 1931, was duly filed and duly approved by the Attorney General. Its property was not assessed during this period, nor was the validity of the exemption called in question until March, 1933, when these proceedings were taken. The tax commission, on advice from its counsel, has made the tentative assessment and it will, if the injunction is dissolved, finally assess the property. Plaintiff does not deal directly with private customers. It sells by private contract to corporations and municipalities, who take the gas at plaintiff's lines. Plaintiff forces its gas through its pipe lines at high pressure, and that pressure forces the gas into the local delivery systems. In the construction of its pipe line plaintiff employed a large number of men with families, and appointed a resident agent, who has an office in Mississippi. It has no franchise to and does not, distribute natural gas to customers, but it holds itself out as a wholesale seller of natural gas by private contract, in which it stipulates the price and quantity. It delivers and sells most of its gas for distribution in Memphis, Tenn., to which it transports it through its pipe lines. Plaintiff has not domesticated itself in Mississippi under its statutes but has conducted its business as a foreign corporation engaged mainly if not solely, in interstate commerce. State Tax Commission v. Interstate Natural Gas Co., 284 U.S. 41, 52 S.Ct. 62, 76 L.Ed. 156. The taxes claimed amount to approximately $150,000. Of this sum the state tax collector is entitled to 20 per cent. commission. If the assessment should become final, it will constitute a first lien on plaintiff's property. Prior to 1922 there were twelve communities in Mississippi being served with artificial gas; at the time the bill was filed forty-three communities were being served with natural gas. It is not claimed that the Attorney General has discovered that the

exemption was obtained by means of fraud or misrepresentation. Foreign corporations have claimed, and from time to time obtained, tax exemptions for property in the state, and there is neither claim nor proof that an exemption has ever been refused on the ground that the applicant was a foreign corporation.

The District Judge thought that since it appeared on the bill, the answer, and the agreed statement of facts that defendants had definitely determined to and would reject plaintiff's claim of exemption, the bill had not been prematurely brought. He rejected, as unfounded, the claim that plaintiff must, as part of its administrative remedy, pursue the appeal to the judge of the circuit court, provided by chapter 206, 1934 General Laws of Mississippi, before it could resort to a Federal equity court for relief. He held that the matter in controversy was not one for administrative, but for judicial decision, a matter of whether plaintiff's property was in law taxable or nontaxable, and that plaintiff had a right to resort immediately to equity to resist the unlawful taking of its property by asserting tax claims against that which was tax exempt, without going through the formalities of administrative proceedings, which, being administrative, could not decide the question raised. He thought that the procedure for appeal provided by the act of 1934 was judicial, and not administrative, and if administrative was so complicated and uncertain and so burdensome as that plaintiff could not be compelled to resort to it before suing in the federal court. He thought, too, that these questions aside, the Federal Declaratory Judgment Act made provision for just such a suit as this, where the controversy is definite and real, and the right to be declared simple and plainly asserted. On all these considerations he rejected all the appellants' procedural points, and turning to the merits, decided them in favor of appellee.

We think he was right throughout, and that we need not write much in demonstration. Reasonable in its grounds, and peremptory in its application as is the principle that one may not come into court complaining of administrative action which has not yet been, and therefore may not be finally taken, and he must therefore exhaust administrative remedies before bringing suit, Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed.

**148**

150; Chicago, M. & St. Paul R. Co. v. Risty, 276 U.S. 567, 48 S.Ct. 396, 72 L.Ed. 703; Porter v. Investors' Syndicate, 286 U.S. 461, 52 S.Ct. 617, 76 L.Ed. 1226; First National Bank v. Gildart (C.C.A.) 64 F.(2d) 873, it is reasonable and peremptory only when applied to cases and under circumstances where it is fitting to apply it. It does not apply where, as here, the question in dispute is purely a legal one, and nothing of an administrative nature is to be or can be done. Yazoo & M. V. R. Co. v. Adams, 81 Miss. 90, 32 So. 937; Chandler v. Exec. Committee, 165 Miss. 690, 146 So. 597; Jetton v. University of the South, 208 U.S. 489, 28 S.Ct. 375, 52 L.Ed. 584; North American Old Roman Catholic Diocese v. Havens, 164 Miss. 119, 144 So. 473, 84 A.L.R. 1313, and note, at pages 1315 and 1318; Conn v. Jones, 115 Ohio St. 186, 152 N. E. 897; Smith v. Osburn, 53 Iowa, 474, 5 N.W. 681; Illinois C. R. Co. v. Adams, 180 U.S. 28, 21 S.Ct. 251, 45 L.Ed. 410; Berryman v. Whitman College, 222 U.S. 334, 32 S.Ct. 147, 56 L.Ed. 225; Wright v. Central of Georgia R. Co., 236 U.S. 674, 35 S.Ct. 471, 59 L.Ed. 781; Fargo v. Hart, 193 U.S. 490, 24 S.Ct. 498, 48 L.Ed. 761; City of Jackson v. Fire Ins. Co., 132 Miss. 415, 95 So. 845; Columbia Life Ins. Co. v. Hess, 28 Ohio App. 107, 162 N.E. 466; Yazoo & M. V. Railway Co. v. Adams, 81 Miss. 90, 32 So. 937. Further, it does not apply where, as here, though there are steps to be taken they are, under the admitted facts, merely matters of form, and the administrative process, as a process of judgment is really over.

■ The District Judge found, in fact it was not disputed, that the tax commission, upon advice of counsel, had definitely decided to make and, except for the restraining order, would have made its assessment final. Under these circumstances, the administrative process of the tax commission was as completely over as though the final entry had been formally made. If, then, as the District Judge held and we agree, the appeal to the judge of the circuit court provided by statute was a judicial and not an administrative proceeding, nothing would be gained by dismissing the bill and requiring plaintiff to file it over, after the tax commission had formally entered the judgment it had already determined upon. City Bank Farm-

ers' Trust v. Schnader, 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628; Bacon v. Rutland R. Co., 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538; Central Kentucky Nat. Gas Co. v. R. R. Comm. (D.C.) 37 F.(2d) 938; State Corporation Comm. of Kansas v. Wichita Gas Co., 290 U.S. 561, 54 S.Ct. 321, 78 L.Ed. 500; Pacific T. & T. Co. v. Kuykendall, 265 U.S. 196, 44 S.Ct. 553, 68 L.Ed. 975; Prendergast v. New York Tel. Co., 262 U.S. 43, 43 S.Ct. 466, 67 L.Ed. 853.

■ That the appeal provided for by chapter 206 of the General Laws of 1934 is a judicial, and not an administrative, one, we think may not be doubted. All of the provisions look to, all of the language is couched in terms of, judicature. Section 1 provides for an appeal with supersedeas. By it the right to appeal is extended to both the state and the taxpayer; as to the state without bond or penalty; as to the taxpayer, with bond and penalty. If the taxpayer appeals, he files with the clerk of the circuit court a petition for review, and the clerk gives notice to the tax commission. Within twenty days after notice the commission files a copy of its order, and the matter of assessing the property is heard de novo without a jury, the court making its order after hearing, either setting aside, or modifying or affirming the tax commission's order. Significant of the judicial character of the proceeding is the provision that if the order of the commission be affirmed in the circuit court, the person appealing and his sureties shall be liable for damages of 10 per cent. of the amount of taxes in controversy. Further, and we think conclusive evidence of the judicial character of the review is the provision of section 2 "any taxpayer aggrieved by an order of the circuit court may appeal, with supersedeas, to the supreme court." The assessment proceedings then, ending with the commission, and the commission having acted, it is quite beyond question, we think, that the court did not err in taking jurisdiction of the suit for injunction brought by plaintiff, a nonresident, to protect its property from tax proceedings and exactions to which, if it was exempt, it was not at all subject. City Bank Farmers' Trust Co. v. Schnader, 291 U.S. 24, 54 S.Ct. 259, 78 L. Ed. 628; Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014; MacMillan v. R. R. Comm. (D.C.) 51 F.(2d) 400, 403.

■ We think, too, the court was right in the view it took on final hearing, that the supplementary bill for declaratory judgment was properly brought, and that the case was one for such a judgment. For while it may not be doubted that the Federal Declaratory Judgment Act is a purely remedial statute, and does not purport to, nor does it, add to the content of the jurisdiction of the national courts, it certainly does purport in cases where federal jurisdiction is present, to effect and we think it does, effect thoroughgoing, remedial changes, by adding to the coercive or war-like remedies in those courts by way of prevention and of reparation, the more pacific and more prophylactic one of a declaration of rights. When, then, an actual controversy exists, of which, if coercive relief could be granted in it the federal courts would have jurisdiction, they may take jurisdiction under this statute, of the controversy to grant the relief of, declaration, either before or after the stage of relief by coercion has been reached. Borchards Declaratory Judgments, pp. 619-621; Nashville, C. & St. L. R. Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191; United States v. West Virginia, 295 U.S. 463, 55 S.Ct. 789, 79 L.Ed. 1546; Mississippi Power & Light Co. v. City of Jackson (D.C.) 9 F.Supp. 564; Putnam v. Ickes, 64 App.D.C. 339, 78 F.(2d) 223; Automotive Equipment v. Trico Products Corp. (D.C.) 10 F.Supp. 736; Hary v. United Electric Coal Co. (D.C.) 8 F.Supp. 655; Black v. Little (D.C.) 8 F.Supp. 867; Ohio Casualty Co. v. Plummer (D.C.S.D. of Tex.) 13 F.Supp. 169; American Motorists' Ins. Co. v. Central Garage, 86 N.H. 362, 169 A. 121; Penn et al. v. Glenn (D.C.) 10 F.Supp. 483; Post v. Metropolitan Cas. Ins. Co., 227 App.Div. 156, 237 N.Y.S. 64, affirmed 254 N.Y. 541, 173 N.E. 857; Holly Sugar Corp. v. Fritzler, 42 Wyo. 446, 296 P. 206.

We are aware that the statute has been given a more restrictive cast. Columbia Nat. Life Ins. Co. v. Foulke, 13 F.Supp. 350 (D.C.W.D.Mo.). We are not in accord with this view. We see no reason why the statute should not, we think it should, be given the prophylactic scope to which its language, in the light of its purpose, extends, under it disputants as to whose rights there is actual controversy, may obtain a binding judicial declaration as to them, before damage has actually been suffered, and without having to make the showing of irreparable injury and the law's inadequacy required for the granting of ordinary preventive relief in equity. Though before the enactment of statutes of this kind declaratory relief was not of a general wideness, it is neither new nor strange in character. It has been granted numbers of times in construing instruments to give directions to trustees and others obliged to carry out written but doubtful directions. The purpose of the statute is, we think, wise and beneficent. It will, if applied in accordance with its terms, effect a profound, a far-reaching, a greatly to be desired procedural reform. We see no sound reason for limiting it.

■ On the merits we agree with the District Judge that plaintiff's pipe line is, within the exemption statute, an enterprise of public utility, "a pipe line used in the transportation and distribution of natural gas for fuel, light and power." We think a plain reading of the statute compels this conclusion. Nothing is cited to us, nothing called to our attention, which modifies or restricts the meaning of the words as they read. The exemption has been formally applied for, formally allowed, and formally enjoyed. It is neither proven nor alleged that the Attorney General has, under the statute, determined that there was any misrepresentation or wrong dealing in applying for and obtaining it. Appellants, in their effort to give technical, restrictive meaning to the words "public utility," and "distribution" used in the statute, view the statute, we think, with an eye too single to the right of the state to tax, too closed to the facts which establish plaintiff's right, a vision too foreshortened by that regard. Their contention that the statute, in using the word "public utility" uses it in the sense of properties devoted and dedicated to the public use, is, we think, clearly untenable. The language in the Constitution, § 182, art. 7, which authorized the granting of these exemptions, shows this. That language is: "The Legislature may grant exemption from taxation in the encouragement of manufactures and other new enterprises of public utility." The language there used, the language of the statute, was intended to have, it must be given, a physical, not a legalistic, meaning. Those who enacted these laws had it in mind to bring new enterprises into the state, to add new wealth and comfort, new economic sources of welfare and happiness to its people. They were look-

## 150

ing to, they had in mind, a wide and ever wider extension in Mississippi of the practice there of the useful arts, the institution there of properties adding to the state's resources, and to the employment of its people. They intended to use, they did use, words of broad scope and meaning. We think it equally plain that plaintiff's pipe line was established in Mississippi on the faith of this statute, and that it is being used there in the transportation and distribution of natural gas for fuel, light, and power. The lines are permanently laid. They will permanently remain. They transport gas; they distribute it. Under the language of the statute they would be entitled to exemption if they did either. They do both.

We think, too, that there is more of assertion than there is of proof in appellants' sweeping claims that the state of Mississippi has always looked on foreign corporations with too jaundiced an eye ever to have granted tax exemptions on their properties. At least we find no evidence of this in the statute under construction, none in the record before us. There is proof there that the Attorney General has granted certificates to foreign corporations; none that he has ever denied an exemption on that ground. Decisions of the Supreme Court of Mississippi are cited in which the right of foreign corporations to tax exemption has been recognized. None are cited in which it has been denied. There is certainly nothing in the statute expressly or impliedly limiting the exemption to domestic corporations. Indeed, the exemption is not conferred on corporations at all. It is given in respect of properties. It is conferred on the enterprise itself. Adams v. Tombigbee Mills, 78 Miss. 676, 29 So. 470. Under the Constitution and laws of Mississippi property is taxed uniformly, wholly without regard to ownership. It is exempted the same way. City of Jackson v. Edwards House, 145 Miss. 135, 110 So. 231; Jackson v. Deposit Guaranty Bank, 160 Miss. 752, 133 So. 195; Miller v. Lamar Life Ins. Co., 158 Miss. 753, 131 So. 282. This fact that exemption is given to the property, and not to its owners, is sufficient, we think, to distinguish the long list of cases from other states appellants rely on, holding that grants of exemption to corporations are usually held to be limited to domestic corporations. Neither on the face of the Mississippi statute nor in the

reason and spirit of it, neither in the acts of its officers nor in the decisions of its courts, Adams v. Lamb-Fish Lbr. Co., 103 Miss. 491, 60 So. 645, can there be warrant found for the view appellants advance, that the properties of foreign corporations, established in the state of Mississippi on the faith of the exemption the state extended, were intended to be, and were, discriminated against, by excluding them from its benefits. Adams County v. National Box Co., 125 Miss. 598, 88 So. 168; LeBlanc v. I. C. R. Co., 72 Miss. 669, 18 So. 381; Robertson v. Mississippi Pack. Co., 134 Miss. 837, 98 So. 539; Equitable Finance Co. v. Board of Sup'rs of Lee County, 146 Miss. 734, 111 So. 871.

We think the decree was right. It is affirmed.